[Whitehead & Son v. Lane & Bodley Company.]

# Whitehead & Son *v.* Lane & Bodley Company.

### *Bill in Equity for Foreclosure of Mortgage; Cross-Bill to establish Equitable Set-off.*

1. *Remedies of mortgagee, legal and equitable.*—A mortgagee may file a bill in equity to foreclose the mortgage, although he may also have an adequate remedy at law for the recovery of his debt.

2. *Description of premises in conveyance.*—When a conveyance of lands contains a particular description of the premises conveyed, by which they can be clearly identified, the insertion of other descriptive words, which are inapplicable, or incapable of definite application, will not be allowed to defeat it.

3. *Sale of machinery; admissibility of parol evidence to affect writing; burden of proof as to fraud or misrepresentation; defenses available to purchaser.*—On a sale of machinery by a manufacturer, the contract being reduced to writing, and the machinery delivered corresponding with the description therein contained, parol evidence is not admissible, in the absence of fraud or misrepresentation, to vary the terms of the writing; the burden of proving fraud or misrepresentation is on the purchaser; and not being established by the evidence, he can not resist the payment of the agreed price, when there was no warranty, because the machinery was found to be unsuitable for the particular purpose for which it was intended.

APPEAL from the Chancery Court of Butler.

Heard before the Hon. JOHN A. FOSTER.

The original bill in this case was filed on the 10th November, 1881, by the "Lane & Bodley Company," a private corporation chartered under the laws of Ohio, against James M. Whitehead and Augustus C. Whitehead individually, and as partners doing business under the firm name of Whitehead & Son; and sought to foreclose a mortgage on a house and lot in the town of Greenville, and on certain personal property therein particularly described. The mortgage, a copy of which was made an exhibit to the bill, was dated the 23d December, 1880, and was signed by said J. M. Whitehead and his wife, and by Whitehead & Son; and it purported to be given to secure the payment of two promissory notes, each for $150, executed by said Whitehead & Son, of even date with the mortgage, and payable respectively on the 23d June, and 23d September, 1881, to "Lane & Bodley Company, or order," at the banking-house of J. R. Adams & Co. in the city of Montgomery, with interest from date. The notes were given in payment of the balance due for the agreed price of certain mill machinery and

[Whitehead & Son v. Lane & Bodley Company.]

fixtures sold by the complainant to said Whitehead & Son; and each note, copies of which were made exhibits to the bill, contained a stipulation in these words: "It is, furthermore, the express condition of the delivery of the said saw-mill and machinery, &c., to us, that the title, ownership and possession does not pass from the said Lane & Bodley Company, until this note is paid in full, with interest; and said Lane & Bodley Company may take possession of said saw-mill, machinery, &c., and sell the same for our account, at any time, in case this note is not promptly paid; in which case, we hold ourselves liable for any and all loss or damage caused by our failure to meet this note." The property conveyed by the mortgage was therein described as follows: "A house and lot in the city of Greenville, Alabama, containing one acre, more or less, fronting seventy feet on Conecuh street, being lot number one (1) in square number four (4) in said city, lying between Conecuh and Chestnut streets, and known as the DeWitt Dillard place; also, the saw, saw-frame, log-carriage and fixtures, purchased by us from said Lane & Bodley Company, for the saw-mill of J. M. Whitehead & Son in Butler county." The prayer of the bill was, that an account might be taken to ascertain the amount due on the notes secured by the mortgage, and that the property conveyed by it, real and personal, might be sold in satisfaction of the debt, if not sooner paid by the defendants.

The defendants filed a joint demurrer to the bill, assigning as causes of demurrer, 1st, that the bill contained no equity; 2d, that the complainant had a complete and adequate remedy at law; 3d, that the notes showed an executory contract for the sale of the machinery, the title remaining in the complainant until the notes were paid, and that the complainant could not hold the property, and at the same time recover the agreed price. The chancellor overruled the demurrer, and the defendants then filed an answer, in which they stated, in substance, that their contract for the purchase of the machinery was made, in Montgomery, with C. J. Dudley & Co., as agents of the complainant, who was engaged in Ohio in the manufacture of machinery for mills; that they were not skilled in the business, and had no practical knowledge of the machinery and fixtures required, and trusted to the representations of said C. J. Dudley & Co. as to these matters; that they desired to erect a saw-mill and purchase the machinery necessary for squaring large timber for the Pensacola market, and so stated to said C. J. Dudley & Co., who represented that the machinery purchased was suitable for that purpose; that the mill and machinery, when delivered and put into operation, proved to be entirely too light for the purpose intended, and incapable of squaring large timber; and that they had sustained great loss and

damage on account of this deficiency. J. M. Whitehead further answered, that the lot which the mortgage purported to convey, described as being situated in square number four, never belonged to him, and was inserted in the mortgage by mistake; and that the lot which he intended to convey, situated in square number seven, had since been sold and conveyed to another person, who had no notice of the mortgage. They asked that their answer might be taken and considered as a cross-bill; that an account might be taken of the damages which they had sustained by the incapacity and unsuitableness of the mill and machinery, and the same be allowed as an equitable set-off against the complainant's demand, and that the notes and mortgage might be delivered up and cancelled. C. J. Dudley & Co. were also made defendants to the cross-bill, and it was prayed that they be required to deliver up, for cancellation, certain notes which Whitehead & Son claimed to have left with them when the contract was entered into, and for which the other notes were executed as substitutes; but these matters require no special notice.

C. J. Dudley, whose deposition was taken by the complainant, denied any misrepresentations on his part, as to the capacity or quality of the machinery sold; and appended to his answers, as an exhibit, the written contract signed by said Whitehead & Son, with the accompanying guaranty signed by C. J. Dudley & Co. The contract was in these words: "*Order or agreement to purchase.* Montgomery, Dec. 30, '80. This is to certify, that we have this day agreed to purchase of C. J. Dudley & Co. one Lane & Bodley Company solid iron frame saw-mill, known as their 'Siding Mill,' with independent screw head blocks, with common dogs, forty (40) feet of carriage, sixty (60) feet of twelve-inch three-ply rubber belt, and one solid-tooth circular saw, fifty-two (52) inch; to be shipped from Cincinnati, Ohio, by or about January 14th, 1881; which we agree to receive upon arrival at Greenville, and pay freight and charges thereon. And we also agree to remove said saw-mill from the station, to a suitable storage, and otherwise take good and proper care of the same, and to notify said C. J. Dudley & Co. as soon as possible; and they may put the said saw-mill in working order at our expense, and furnish the necessary instructions for running the same. We further agree to settle for said saw-mill, [if it?] in fact proves equal to the guaranty hereon printed, on the following terms;" specifying the cash payment, the notes and mortgage, and adding: "It is expressly understood, by this agreement to purchase the above named machinery we do not acquire any right, title or interest in the same, until after the specified terms of payment are fully completed; and the said C. J. Dudley & Co., or their authorized

[Whitehead & Son v. Lane & Bodley Company.]

agents, have the right to take possession of said machinery at once, upon refusal or neglect to comply with said terms of payment." The accompanying guaranty was in these words: "The above machinery to be warranted of good materials and workmanship; to do work well, if properly used; and to do as good and as much work, under the same conditions, as any machinery of its class in the United States. Should any defect be discovered, in workmanship, materials, or efficiency of the said machinery, notice must be given to us within one month from the time the machinery is put into use, that the cause may be removed; else we shall not be held responsible."

The chancellor sustained a demurrer to the cross-bill, and dismissed it; and on final hearing on pleadings and proof, held the complainant entitled to relief, and ordered an account of the mortgage debt to be stated by the register. The appeal is sued out by the defendants below, and they here assign as error the overruling of their demurrers to the bill, the dismissal of their cross-bill, and the final decree.

CLOPTON, HERBERT & CHAMBERS, for appellant.

BUELL & LANE, contra.

BRICKELL, C. J.—1. It may be that, under the contract of sale, the title to the mill and machinery vested in the purchasers, only upon the condition that the purchase-money was paid; and that, upon default in payment, the sellers could have reclaimed it. But the sellers had also the security of the mortgage, and it was their right to pursue that security, rather than resort to a reclamation of the things sold. It is the common case of a mortgagee, having a legal remedy for the recovery of the mortgage debt, preferring the equitable remedy to foreclose the mortgage.

2. There is an error in the mortgage, in describing the mortgaged premises as situate in square number *four* in the city of Greenville, while their real location is in square number *seven*. What would be the effect of the misdescription, if there was not a further designation and description of the premises, by which they may be precisely identified, it is not important to consider. There is the further description, that they are situate between Conecuh and Chestnut streets, fronting seventy feet on Conecuh street, and are known as the "DeWitt Dillard place," which is inapplicable to any part of square number four. The rule is of general application, that if from any part of the description the premises intended to be conveyed clearly appear, the conveyance will not be defeated, because other circumstances of description are added, which are inapplicable,

or not capable of definite application.—*Clements v. Pearce*, 63 Ala. 284.

3. The principal point of contention is, whether the mill and machinery were sold to the appellants as fitted for the particular purpose, the squaring of large timber, for which they intended it; or whether the sale was of things described and defined, the appellants relying upon their own judgment as to their fitness for the purpose for which they designed them. There is conflict in the evidence upon the point. The burden of proof rests upon the appellants, and we are not prepared to say it is shown, by a preponderance of the evidence, that there was a contract, or warranty, or representation, by the agent of the sellers, that the mill and machinery were fitted for any particular purpose. The contract is in writing; the things sold are described, and the things delivered correspond to the description. In the absence of fraud, or misrepresentation, there is no room for parol evidence which would vary the contract. The most that can be justly said, however, in view of all the evidence, is, that the appellants have the misfortune of having purchased the mill and machinery upon the supposition that it would answer the purpose for which they designed it, and find upon trial that it is unsuitable.` The misfortune is of frequent occurrence; and when there is no fraud, no breach of contract, or of warranty, on the part of the seller, the purchaser must bear it. If the cross-bill had been entertained, relief upon it could not have been granted; and from its dismissal the appellants have sustained no injury.

Affirmed.