### SCHLAWIG v. PURSLOW et al.

(Circuit Court of Appeals, Eighth Circuit. January 29, 1894.)

#### No. 253.

1. ADVERSE POSSESSION—WHAT CONSTITUTES—DOUBTFUL PAPER TITLE.

Taking possession under an instrument which the parties intend to operate as a complete relinquishment of title, followed by the most unequivocal acts of full ownership during the entire period of limitation, without objection by the grantors, will be held to show adverse possession, although it is doubtful whether the instrument, on its face, should be construed as a deed, or only as a mortgage.

**2. LACHES—WHAT CONSTITUTES.**

One who waits more than 10 years before asserting a right to redeem land, standing silently by and permitting another in possession, and claiming absolute ownership, to remove old buildings, and erect an expensive new one, will not be aided by a court of equity.

Appeal from the Circuit Court of the United States for the Northern District of Iowa.

In Equity. Suit by J. J. Schlawig against Robert Purslow, A. S. Garretson, the Sioux City Savings Bank, and the Sioux National Bank for an accounting and for the redemption of real estate. The bill was dismissed below without an opinion. Complainant appeals. Affirmed.

C. C. Cole, for appellant.

Asa F. Call, (William L. Joy and C. L. Joy, on the brief,) for appellees.

Before CALDWELL, Circuit Judge, and THAYER, District Judge.

THAYER, District Judge. This was a bill for an accounting between a mortgagor and mortgagee, and to redeem from the lien of a mortgage certain real estate situated in Sioux City, Iowa, known as the west 22 feet of lot 1, block 22, in East addition to said city. The material facts, as disclosed by the record, are as follows: On the 1st day of February, 1875, the appellant, Schlawig, mortgaged said property to Robert Purslow, one of the appellees, to secure an indebtedness of $2,460, which sum he promised to pay one year thereafter, with semiannual interest at the rate of 10 per cent. per annum. The indebtedness not having been paid, a suit was subsequently brought by Purslow in the district court of Woodbury county, Iowa, to enforce said mortgage, and in such proceeding a decree of foreclosure was entered on October 29, 1876, for the sum of $2,975, together with costs and attorney's fees. No sale was made in execution of said decree of foreclosure, but in lieu thereof, on December 1, 1877, Schlawig and wife executed the following instrument, which was duly acknowledged, delivered, and recorded.

"Know all men by these presents that we, John J. Schlawig and Ursula Schlawig, his wife, of Woodbury county and state of Iowa, in consideration of the sum of three thousand four hundred and twenty-one 55-100 dollars in hand paid by Robert Purslow, of Woodbury county and state of Iowa, do hereby sell and convey unto the said Robert Purslow the following described premises, situated in the county of Woodbury and state of Iowa, to wit: Commencing at the northwest corner of lot one, (1,) block twenty-two, (22,) Sioux City, East addition; thence running east twenty-two (22) feet on the north line of said lot; thence south fifty (50) feet; thence west on the south line of said lot twenty-two (22) feet; thence north to the point of beginning, —being the west (22) twenty-two feet of said lot. This deed is made under the following state of facts:

"(1) The said Purslow having obtained a decree of foreclosure against said grantors of a mortgage upon said premises, which is the sole consideration of this deed, now, therefore:

"(2) The grantors are to retain possession of said premises for one year from this date, December 1, 1877.

"(3) The same redemption that would be allowed by law to the grantors and their creditors had a sale under execution been made shall be allowed for one year from December 1, 1877.

"(4) At the expiration of said year, unless redeemed according to law, the grantors will surrender the immediate possession of said premises to the grantee. And we hereby covenant with the said Robert Purslow that we hold said premises by good and perfect title; that we have good, right, and lawful authority to sell and convey the same; that they are free and clear of all liens and incumbrances whatsoever; and we covenant to warrant and defend the said premises against the lawful claims of all persons whomsoever. It is further stipulated that, if grantors redeem said premises, they will pay taxes advanced by grantee, and $25.00 paid by him on Joseph Reappier's judgment. And the said Ursula Schlawig hereby relinquishes her right of dower in and to the above-described premises.

"Signed this 1st day of December, A. D. 1877.    J. J. Schlawig.
"In presence of E. E. Lewis.    Ursula Schlawig."

The consideration expressed in this instrument ($3,421.55) was not refunded within the year; whereupon, on December 1, 1878, Purslow took possession of the premises with the consent of Schlawig and wife, and the premises have ever since been in the actual possession of Purslow or of his grantees. On February 4, 1880, Purslow conveyed the premises, by warranty deed, to A. S. Garretson. On October 2, 1880, Garretson conveyed the same premises, by warranty deed, to the Sioux City Savings Bank, and on December 28, 1881, the Sioux City Savings Bank conveyed the same, by warranty deed, to the Sioux National Bank, by whom the property is now held and occupied. The purchase of the lot in controversy by Garretson appears to have been made for and in behalf of the Sioux City Savings Bank, of which he was cashier, and immediately after his purchase, during the spring and summer of 1880, the bank erected valuable improvements thereon at an expense of about $22,000. The improvements consisted of a substantial brick building with stone trimmings, 22 feet wide, 90 feet deep, and 2 stories high, which was designed to be used for banking purposes, and has been so used since its completion. At the time Purslow took possession of the property, there was a frame building situated on the lot in controversy. This was removed by Purslow when the bank building was erected, and the new structure was extended for about 40 feet over an adjoining lot located at the rear of the premises in dispute, which adjoining lot belonged to the Sioux City Savings Bank. At the present time, and since its erection, the bank building covers the premises in controversy and the adjoining lot, the title to which is not in dispute. An expensive vault has also been constructed for the use of the bank, the foundation of which stands partly on the lot in controversy and partly on the adjoining lot. From December 1, 1878, until June 11, 1891, when the present suit was instituted, Schlawig spent a portion of his time in the Black hills, but his family resided continuously in Sioux City, and he visited his family on many occasions. It is not denied that he was fully aware, during all of that period, of the improvements that were being made on said lot, and of the several conveyances that were made by Purslow and by those claiming under him. During the past 12 or 13 years the property in question has greatly appreciated in value, and it is now regarded as one of the most eligible business sites in Sioux City.

On the argument of the case, much time was spent in discussing the question whether the instrument executed by Schlawig and wife on December 1, 1877, is in legal effect a mortgage, or a deed by which the grantor reserved the option to purchase the property from his grantee within one year from the date of the conveyance. The appellant contends, and the bill charges, that the instrument is merely a mortgage, which was executed for the purpose of further securing the original mortgage debt, and that when Purslow took possession of the premises, on December 1, 1878, he entered as a mortgagee, and not as owner of the fee. On the other hand, the appellees insist that the instrument is a deed by which the grantor reserved the right to reacquire the title from his grantee within a given period. The view that we have taken of the case does not require us to determine definitely whether the conveyance of December 1, 1877, is in fact a deed, as the appellees contend, or merely a mortgage. Whatever may be the legal effect of the language employed, we are satisfied that the parties did not intend, when the instrument was executed, that it should operate as a mortgage, and as further security for the mortgage indebtedness. The proof shows very clearly that, when it was executed, the value of the property was about equal to the amount of the incumbrance, as fixed by the decree of foreclosure. Neither party, therefore, had any special object to gain by a judicial sale under the decree of foreclosure, as the mortgagor's equity of redemption was of no value, and such sale would merely enhance the costs. We consider it therefore highly probable, as all of the oral testimony tends strongly to show, that the conveyance of December 1, 1877, was executed in pursuance of an agreement between the mortgagor and the mortgagee that the latter should take the property in satisfaction of the mortgage debt, without a judicial sale, and that the mortgagor should retain possession for one year, with the right, in the mean time, to reacquire the title if he elected to do so. It follows from this view of the case that when Schlawig and wife surrendered the premises to Purslow, about December 1, 1878, it was understood by both parties that he went into possession under a claim of title as owner of the fee, and not merely as an incumbrancer or mortgagee. All of Purslow's subsequent acts, as well as the conduct of his grantees, are consistent with this view, and wholly inconsistent with the theory that he merely took possession as mortgagee under an unsatisfied mortgage. Within a short time after entering into possession of the premises he conveyed the same, by warranty deed, to A. S. Garretson, and subsequently bought from the Sioux City Savings Bank, and removed from the mortgaged premises, the frame structure that was standing thereon when he took possession. It is hardly possible to conceive of any acts of ownership which might have been done and performed by Purslow and his grantees, that would have more clearly indicated, to any one interested in the mortgaged premises, that they had severally taken possession thereof as owners of the fee, and were holding the premises adversely to the mortgagor. Moreover, Schlawig's silence and inaction while the premises were

being conveyed by warranty deed from one grantee to another, and while the old building was being removed from the premises, and while new and extensive improvements were being erected thereon, are most persuasive evidence that he regarded Purslow and those claiming under him as the rightful owners of the property, and as authorized to deal with it as they thought proper. · It is insisted, however, if the conveyance of December 1, 1877, was in fact and in legal effect a mortgage, that, by taking possession under the same. Purslow became subject to all of the liabilities and disabilities of a mortgagee in possession, and that neither he nor those claiming under him could assume a different relation with respect to the mortgaged premises. In other words, it is broadly contended that the possession taken by the grantee under the conveyance of December 1, 1877, could not ripen into a title under the statute of limitations, because, that instrument being merely a mortgage, such possession was not adverse to the mortgagor. We do not dispute the general proposition that, where one takes possession of lands under a written instrument, the nature of that possession is ordinarily determined by the character of the instrument; nor the further proposition that possession by a mortgagee of the mortgaged premises is usually not adverse, but consistent with the rights of the mortgagor. Green v. Turner, 38 Iowa, 112, 118; Crawford v. Taylor, 42 Iowa, 260, 264. It may also be conceded that, under the laws and judicial decisions of the state of Iowa, a mortgage does not vest the mortgagee with an estate in the land, but simply creates a specific lien or charge thereon to secure a debt. Newman v. De Lorimer, 19 Iowa, 244; Gower v. Winchester, 33 Iowa, 303, 306. These concessions, however, are of no benefit to the appellant on the state of facts disclosed by the present record. The distinguishing feature of this case is, that the parties did not regard the conveyance of December 1, 1877, as a mortgage, and Purslow did not enter into possession as mortgagee, but as the rightful owner of the fee, of which fact Schlawig must have been well aware. It is doubtful, to say the least, whether, from the face of that conveyance, it should be construed as a mortgage, or as a deed which secured to the grantor the right to repurchase the land at a fixed price within a specified time. That the parties did not intend it to operate as a mortgage is made manifest, we think, by the oral testimony, by the circumstances which attended its execution, and by the subsequent conduct of both of the parties thereto. Under the conveyance, Purslow took possession on December 1, 1878, and for more than 10 years thereafter he and his grantees exercised a dominion and control over the property which would have convinced any one who was not willfully unconscious of the significance of their acts that they claimed to be the rightful owners of the property, and that they were holding it discharged from the lien of the alleged mortgage. In view of these facts, we are constrained to decide that the plea of the statute of limitations was fully sustained by the proof, and that the bill was properly dismissed on that ground. In our judgment the record discloses more than 10 years' adverse possession

of the premises in controversy under an open, notorious, and continuous claim of ownership, which is sufficient, under the Iowa statute, to bar the present suit. McClain's Code Iowa, § 3734.

The doctrine of laches, as heretofore applied, both by this court and other courts, also fully warranted the decree dismissing the bill of complaint, even if we should concede that there was no other adequate ground for refusing relief. It is a fundamental rule that courts of equity will not aid a suitor who has for a long time acquiesced in the assertion of adverse rights without any excuse for so doing; and especially is this true if his conduct savors of bad faith, and the relief sought will be productive of much hardship and injustice to others. Godden v. Kimmell, 99 U. S. 201; Badger v. Badger, 2 Wall. 87; McKnight v. Taylor, 1 How. 161; Naddo v. Bardon, 2 C. C. A. 335, 51 Fed. 493; Lemoine v. Dunklin Co., 2 C. C. A. 343, 51 Fed. 487. Courts of equity will also refuse to interfere, though the period of delay is comparatively short, where the complainant, being out of possession of property, has waited before bringing suit until the same has greatly enhanced in value, or has stood by and suffered the opposite party, without notice of his claim, to expend his money in making valuable improvements on the property to which the claim relates. Landrum v. Bank, 63 Mo. 48, 56, 57; Moreman v. Talbott, 55 Mo. 392; Kinne v. Webb, 4 C. C. A. 170, 175, 54 Fed. 34. In the case at bar the record shows, not only that the complainant below waited for an unreasonable period before asserting his right to redeem, but that he stood silently by, and permitted the defendants below to remove the old improvements on the mortgaged property, and to expend a large sum of money in erecting a substantial brick building, which extends over an adjoining lot, and cannot now be removed without inflicting a great loss on the appellees. It is evident that the relief sought by the complainant in this proceeding cannot be afforded at this late day without doing gross injustice, which would be justly attributable to the laches and bad faith of the complainant. Our conclusion is that the decree of the circuit court was undoubtedly right, for the reasons last indicated, and that the same should, in any event, be affirmed. It is so ordered.