# DeJarnette *v.* McDaniel.

*Statutory Action in nature of Ejectment.*

| 93 | 215 |
|----|-----|
| 99 | 536 |
| 93 | 215 |
| 105 | 479 |
| 93 | 215 |
| 115 | 557 |
| 93 | 215 |
| 116 | 435 |
| 93 | 215 |
| 122 | 209 |
| 122 | 404 |
| 93 | 215 |
| 130 | 321 |
| 93 | 215 |
| 142 | 703 |

1. *Indefinite description of lands in mortgage; parol evidence identifying.*—When lands conveyed by mortgage are therein described only by the numbers of the section, township and range, without other descriptive or identifying words, the mortgage is not void for uncertainty, but is admissible as evidence, notwithstanding the insufficiency of the description, in connection with oral evidence showing that, at the time it was executed, the mortgagor was in possession of the lands sued for, the numbers of which corresponded with those stated in the mortgage, and that he owned no other lands.

2. *Adverse possession as between landlord and tenant; attornment to third person.*—When a person enters into the possession of land by permission of the owner, or by permission of any one representing and authorized to represent the owner, his possession does not become adverse to the owner by his attornment and payment of rent to a third person, unless notice thereof to the owner is shown, or the presumption of notice is raised by the notoriety of the facts.

3. *Presumption as to receipt of letter sent by mail.*—When a letter is sent through the mails, properly addressed, and with the postage prepaid, the presumption is indulged that it was duly received; but this presumption may be overcome by proof of the fact that it was not received.

4. *Proof of notice of adverse claim to land.*—The fact that a cousin of plaintiffs, who lived in Mississippi, or any other relative, lived near to the lands in controversy during the time an adverse claim of ownership and possession was asserted by another person, "is not, as matter of law, an evidential factor to which the jury should look in determining whether plaintiffs had, or ought to have had, notice of that adverse claim."

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. JAMES B. HEAD.

This action was brought by Robert E. DeJarnette and others, against Alex. McDaniel, to recover a tract of land containing eighty acres, which was particularly described in the

[DeJarnette v. McDaniel.]

complaint; and was commenced on the 26th April, 1884. The plaintiffs were the children and heirs at law of Elias M. DeJarnette, deceased, who died in July, 1854; and they claimed the land under a deed of gift executed to their father by Mrs. Dicey DeJarnette, his mother, which was dated October 17th, 1853, and which reserved to her a life-estate in the land. The defendant held under John T. Milner, who was admitted to defend on his own title, and who pleaded not guilty and the statute of limitations of ten years. Milner claimed under a purchase and conveyance, in 1881, from the heirs and personal representative of Richard Hudson, deceased, who claimed under a mortgage executed to him, in 1859, by Mrs. Dicey DeJarnette and one of her daughters (Mrs. Permelia Jones), and an alleged purchase by him at a sale under the power in the mortgage in 1869. This mortgage was admitted in evidence, against the objection and exception of the defendant, in connection with the oral evidence stated in the opinion.

The evidence showed that, at the time the deed to said Elias M. was executed in 1853, he was living on the land with his mother, and continued to live there until his death in 1854; that his family remained on the land until some time during the year 1856, when they removed to Mississippi; that Mrs. Dicey DeJarnette continued in possession of the land until her death in 1862; that in 1865, soon after the close of the war, one Richard A. Jones, a cousin of the plaintiff, finding the land unoccupied, placed Mary Holmes, a former slave of the family, in possession, to take care of it for plaintiffs; and that Mary Holmes afterwards paid rent to said Hudson and his heirs. A material question in the case was as to the character of Mary Holmes' possession, and the effect of her attornment to Hudson. The opinion states the substance of the evidence bearing on these questions.

The plaintiffs requested the following charges in writing, and duly excepted to their refusal: (1.) "The mortgage of Hudson does not constitute color of title, the description of the lands therein being too vague and uncertain for that purpose." (2.) "The plaintiffs' knowledge of the adverse possession under claim of title, and acquiescence therein for the period of ten years prior to the bringing of this suit, is essential to bar their right to recover in this case." (3.) "In determining whether or not the notoriety of an adverse possession was such as to afford *prima facie* evidence that it was known to the owner, it is proper to consider the distance of the owner from the place at which such adverse possession is set up." (4.) "Before adverse possession can prevail as a

[DeJarnette v. McDaniel.]

bar to this action, such fact must have been brought to the knowledge of the plaintiff." (5.) "When the title is shown not to attend possession, the law, not favoring wrong, will not presume that the possession was taken, or is held, in hostility to the true title." (7.) "A possession permissive in its inception can become adverse only by a clear, positive, continuous disclaimer and disavowal of the title of him from whom it was derived, and the assertion of a hostile title brought to his knowledge." (8.) "When the owner of lands resides in another State, and at a great distance from the place where an adverse possession is set up, greater notoriety to the adverse character of such possession is required to affect the owner with notice, than is required when he resides near the place where such possession is set up." (9.) "The sale by Hudson under the mortgage, in 1869, was an admission of an outstanding superior title, and his possession up to that date if he was in possession, was not adverse."

The plaintiffs also excepted to each of the following charges, which were given by the court on request of defendant:

(3.) "If the jury believe from the evidence that, in 1866, Mary Holmes was told by R. A. Jones to go on the lands in dispute and take care of them, and she did so; and that Hudson afterwards entered on said lands, claiming under the mortgage from Mrs. DeJarnette and Permelia Jones; and that said Hudson sold said lands under said mortgage in March, 1869, and himself bid them in at the sale; and that Mary Holmes afterwards continued to occupy the lands as his tenant, and paid rent to him and no one else, until his death, and thereafter to his administratrix or heirs, said Hudson, his administratrix and heirs at the time claiming said lands as their own against all persons; then the jury must find for the defendant."

(6.) "If the jury believe from the evidence that Mary Holmes was put in possession of said land in 1865 by R. A. Jones, and remained in possession until the Fall of 1866, when, with the knowledge of said Jones, she began to pay rent for the land to said Hudson, under the mortgage introduced as evidence by the defendant; and that thereafter she remained in possession of said land, or any part thereof, with the knowledge of said Jones, as the tenant of said Hudson until his death, and thereafter as the tenant of his widow as administratrix of his estate, until some time in 1875; and that one Mille · then rented the land from Mrs. Hudson, as such administratrix, for five years, and went into possession of said land, or any part thereof, under said lease, and held the property thereafter, controlling and living on said land, or any part

[DeJarnette v. McDaniel.]

thereof, by himself or tenants, for five years; and that Hudson claimed the ownership of said land under said. mortgage, or said foreclosure sale, up to his death; and that his widow and heirs, after his death, claimed to own said land under said mortgage, or said foreclosure sale, until they sold to said John T. Milner; and that said Jones wrote a letter to plaintiff in the Fall of 1866, informing them that Hudson was in possession and claiming said land under said mortgage, and mailed said letter, prepaying the postage thereon, addressed to plaintiffs at their proper post-office; then their verdict must be for defendant."

(7.)  "If the jury believe from the evidence that Hudson, in the Fall of 1866, took possession of said land, or any part of it, by himself or a tenant, claiming the ownership thereof under said mortgage; and that R. A. Jones wrote a letter to plaintiffs informing them of the facts, and of said claim ·of ownership by Hudson under said mortgage, and placed said letter in the post-office addressed to plaintiffs, pre-paying the postage; then such possession and claim of ownership was hostile and adverse to plaintiffs, and, if continued without interruption for ten years or more, would ripen into, and vest the title to said lands in Hudson and his heirs, and defeat plaintiffs' title."

(10.)  "If the jury believe from the evidence that R. A. Jones put Mary Holmes in possession of the land, and not the plaintiffs, then there is no evidence that said Jones was acting as the agent of plaintiffs; and if they believe from the evidence that Mary Holmes went into the possession of the land by the permission or request of said Jones only, she was not the tenant or agent of plaintiffs."

(13.)  "If the jury believe from the evidence that Mary Holmes went into the possession of the land merely by permission of R. A. Jones, and not by the authority and direction of the plaintiffs, then they must find for the defendant."

(14.)  "In considering whether or not plaintiffs ought to have known of Hudson's claim to the land, and his claim of possession through Mary Holmes, the jury may and should look to the fact that there was a practicable way of communication between them and their kinsmen and friends living near the lands."

The charges given, the refusal of the charges asked, and the rulings on evidence, are assigned as error.

SMITH & LOWE, for appellant, cited *Hart v. Kendall*, 82 Ala. 144: *Lucas v. Daniels*, 34 Ala. 193; *Lucy v. T. & C. Co.*, 92 Ala. 246.

[DeJarnette v. McDaniel.]

Jas. Weatherly, Hewitt, Walker & Porter, and J. J. Garrett, *contra*, cited *Hawkins v. Hudson*, 45 Ala. 494; *Chambers v. Ringstaff*, 69 Ala. 140; *Cooper v. Watson*, 73 Ala. 254; *Riggs v. Fuller*, 54 Ala. 141; *Crim v. Nelms*, 78 Ala. 604; *Wells v. Shearer*, 78 Ala. 142; *Fielder v. Childs*, 73 Ala. 567; *Jackson v. Bailey*, 74 Ala. 328; *Fry v. Savings Bank*, 75 Ala. 473.

STONE, C. J.—The chief defense in this case is the statute of limitations of ten years, or that the defendants and those from whom they derived their possession had been in continuous, adverse possession of the land sued for, for more than ten years before this suit was brought—April 26, 1884. Part of the lands, however, have been all the while woodland, of which there was only such possession as partial occupancy under title draws to it. It thus became necessary to put in evidence the title under which their possession had its inception. This consisted of a mortgage of the land made by Mrs. Dicey M. DeJarnette, grand-mother of plaintiffs, and another, executed to Hudson in May, 1854. This mortgage describes the land by section, township and range, but gives no other description. In what county, State, survey or land district the lands lie, is not attempted to be shown in the mortgage.

The plaintiffs objected to the introduction of the mortgage in evidence, on the ground of uncertainty and ambiguity in the description. It was then proved that, at the time the mortgage was executed, and for several years before that time, Mrs. Dicey DeJarnette lived on the land; that she and her son lived together upon it until his death in 1854, and that she owned no other lands. This brought the question directly within the rule declared in *Chambers v. Ringstaff*, 69 Ala. 140. The Circuit Court did not err in receiving the mortgage deed in evidence.

Plaintiffs in this suit are children and heirs at law of Elias M. DeJarnette, who was a son of Dicey M. DeJarnette. As we have stated, he died in 1854. About two years afterwards, his widow and all his children removed from the lands to the State of Mississippi, and have ever since resided there. They have had no possession since that time—say, about twenty-eight years, when this suit was brought—unless what is stated further on was possession. The oldest of the children, plaintiffs in this suit, became twenty-one years old June 9, 1864, twenty years before the present action was commenced. Their title is a deed from Dicey M. DeJarnette to the said Elias M., dated in 1853, in which she reserved to herself the use of the land during her life.

When the family of Elias M., after his death, removed from

[DeJarnette v. McDaniel.]

the land, and to the State of Mississippi, Mrs. Dicey M. De-
Jarnette was in possession, and continued to occupy the land
until early in the year 1862, when she removed from it, and
during the Spring or Summer of that year died.   There is no
testimony that, after Mrs. Dicey M. DeJarnette removed from
the land early in 1862, any one occupied it until 1865, 1866,
or 1867.   After that time it was occupied as we shall hereafter
show.

The defendants made title as follows : In 1859 Mrs. Dicey
M. DeJarnette and another made a mortgage of the land to
Hudson, whose homestead touched the tract mortgaged.   This
mortgage was to secure a debt to Hudson, and contained a
power of sale on default.   In 1869, after advertisement, the
land was attempted to be sold under the mortgage, and Hudson
proclaimed himself the highest bidder and purchaser.   He
made a memorandum of the sale and purchase, but if there
was any attempt to make a deed, or to procure a title, the
record does not disclose it.   Finding an old colored woman,
Mary Holmes, in possession, he demanded rent of her; she
acceded to the demand, paid rent to him, and continued to so
pay to him as landlord until she quit the possession, when
another tenant came in under the Hudson claim of title, and
continued to occupy and pay rent until the land was sold to
Milner in 1881.   Hudson had died, and the administrator or
heirs of his estate became the landlords, and they received
the rent.   They sold and conveyed to Milner in 1881, and he
remained in possession under his purchase up to and including
the time when this suit was brought.   From the time Mary
Holmes went out of possession until the commencement of
this suit, the lapse was less than ten years; but from the time
she commenced paying rent to Hudson until the writ in this
case was issued, was about seventeen years.   So, the real issue
of merit in this case is, whether the statute of limitations
commenced to run against the plaintiffs from the time Hudson
commenced demanding and receiving rent from Mary Holmes.

The testimony of Richard A. Jones, grandson of Dicey M.
DeJarnette and cousin to plaintiffs, and that of Mary Holmes,
a colored woman, formerly a slave in the family, tended to
show the following state of facts, in reference to the possession
of the premises :   When said Richard returned from the war,
he found the place unoccupied.   He testified that he requested
the said Mary Holmes to go on the place and take care of it
for the DeJarnettes, plaintiffs in this suit.   She did go into
possession.   This he did as a friend of the plaintiffs, and
without any request or authority from them.   About the same
time he learned that Hudson claimed to have a mortgage on

the land. This was about the Fall of 1866. He further testified that Mary Holmes, while she was occupying the land, informed him she was paying rent to Hudson. This witness saw the three posted notices of sale under the Hudson mortgage, and he testified that there was a sale of the land under that mortgage. He wrote to some of the plaintiffs, by letters properly addressed and mailed, informing them of the Hudson mortgage and the sale under it, and he did not recollect ever receiving any reply to his letters. The mortgage sale was about fifteen years before the bringing of this suit. The testimony tended to show that Mary Holmes commenced paying rent to Hudson about 1867. This is the origin, nature and duration of Mary Holmes' possession of the land, according to her testimony and that of Richard A. Jones.

The testimony of Mrs. DeJarnette, mother of plaintiffs, which was taken by deposition, was as follows: When, in 1856, she removed with her children to Mississippi, " she left the lands in controversy in charge of her husband's mother, Dicey DeJarnette, and Permelia Jones, who was a daughter of said Dicey DeJarnette (Permelia was the mother of Richard A. Jones); and that Permelia Jones resided on lands adjoining the lands in controversy; and that they, Dicey DeJarnette and Permelia Jones, promised to take care of the lands for witness and the children of Elias M. DeJarnette." This witness, mother of plaintiffs, further testified as follows: "I know nothing further, except that Aunt Mary Holmes lived on the place, and took care of it for me and my children, until she bought a place and moved on it. She was kept on the lands by my husband's mother after the war. She also lived with us when she was a slave. She continued in possession of the lands for our benefit until she bought a place, as above stated."

These two versions of Mary Holmes' possession of the land, its origin, nature and duration, are not in harmony. It was neither shown, nor attempted to be shown, either in direct or cross-examination, or in any other way, how this witness, mother to plaintiffs, acquired information as to Mary Holmes' possession after the war; but no questions are shown to have been raised on this aspect of the case. If the testimony of Richard Jones be true, it would seem that in no sense was Mary Holmes the tenant of plaintiffs, so as to entitle them to notice of her attornment to Hudson. In the case which their testimony tends to prove, if any notice were required (we do not affirm it was), it was enough to notify Richard A. Jones, at whose request he and she testified she entered. On the other hand, if she went on the premises under the direction

[DeJarnette v. McDaniel.]

of any one representing and authorized to represent the plaintiffs, then her attornment to Hudson did not convert her possession into a holding adverse to plaintiffs, until notice thereof is shown to have been carried home to them. If this last hypothesis is found 'to be true, the doctrine declared in *Lucas v. Daniel*, 34 Ala. 188, is applicable to and governs this case.—*King v. Paulk*, 85 Ala. 186; *McCarthy v. Nicrosi*, 72 Ala. 332; 47 Amer. Rep. 418. It is not for us to speculate on the relative weight of the opposing testimony. Enough for us that some testimony went to the jury, tending to show that Mary Holmes went into possession under and by authority of the plaintiffs in this suit, or some one having authority to represent them. And if she did thus go into possession, then her renunciation and attornment to Hudson could not render that possession adverse to plaintiffs, unless and until they were notified thereof.

We have thus shown that, in one aspect of the testimony in this case, it was not incumbent on defendants to show that the plaintiffs had actual notice that Mary Holmes was holding the possession under Hudson. That aspect or category was the one which the testimony of Richard A. Jones and Mary Holmes tended to establish. If, however, Mary Holmes went into possession under any one having authority to represent the plaintiffs, then, to convert her possession into a holding adverse to them, it was not enough that she attorned and paid rent to Hudson. To make it effective, notice must have been given of such changed allegiance. To meet this requirement, it was testified that Richard A. Jones mailed a letter, one or more, properly addressed and postage prepaid, giving notice to plaintiffs of Hudson's claim and sale. Those letters were never answered, and there was no proof whether or not they were received. In charge No. 7, given at the instance of defendants, in postulating what was or would be sufficient notice of such adverse holding, or renunciation of allegiance, the Circuit Court declared it was sufficient if "R. A. Jones wrote a letter to plaintiffs informing them of the facts, and of said claim of ownership by Hudson under said mortgage, and placed said letter in the post-office, prepaying the postage thereon, addressed to plaintiffs." Of course, we suppose it was intended to be understood that the letter should be addressed to the proper post-office of the sendee. The natural interpretation of this language is, that the hypothesized facts amounted to *prima facie* proof of notice given.

In 1 Greenl. Ev. § 40, and n. *a*, it is said: "If a letter is sent by the post, it is presumed, from the known course in that department of the public service, that it reached its des-

[DeJarnette v. McDaniel.]

tination at the regular time, and was received by the person to whom it was addressed, if living at the place, and usually receiving letters there." So, in Whar. Ev., vol. 2, § 1323, is this language : "The mailing a letter, properly addressed and stamped, to a person known to be doing business in a place where there is established a regular delivery of letters, is *prima facie* proof of the reception of the letter by the person to whom it is addressed." Each of these standard authors cites many authorities in support of their several propositions.

We adopt this rule as eminently convenient in commercial transactions, and hold that, if Richard A. Jones wrote and mailed letters, one or more, as he testified he did, this was *prima facie* proof of notice to them of the contents of the letters. Of course, this presumption could have been overturned by proof that the letters were never received. The Circuit Court did not err in giving charge No. 7, asked by defendants.

Charge No. 6, given for defendants, is equally free from error, and charges Nos. 10 and 13 assert correct legal principles.

The Circuit Court erred in giving charge 14 at the instance of defendants. The fact that Richard A. Jones, cousin of the plaintiffs, or any other relation of theirs, was living near the land during the time Hudson asserted ownership and possession, was not, as matter of law, an evidential factor, which the jury should look to in determining whether plaintiffs had, or ought to have had, notice of Hudson's claim to the land and its possession.

The bill of exceptions states it contains all the evidence, and there is nothing which tends to show that the notoriety of Hudson's control and asserted ownership of the land exerted, or could exert, any influence in shaping the conduct of plaintiffs, who were living a great way off, and in another State.

In the aspect of this case which we are now considering, the question was, whether Mary Holmes went into possession of the lands at the instance of any one having authority from plaintiffs to place her there ; and in the event she did, whether plaintiffs acquired notice that she had renounced allegiance to them and attorned to Hudson. To this aspect of the case were mainly directed the charges asked by plaintiffs. Charges 3 and 8 asked by them assert correct legal principles, but it is not perceived they have any bearing on this case. Charge 5 of plaintiffs' series would tend to mislead, and was rightfully refused on that account. Charge 7 asserts too exacting a rule as to disclaimer or disavowal, when the entry is shown to have been permissive.—*Hart v. Kendall*, 82 Ala. 144.

Reversed and remanded.