# Webb v. Elyton Land Co.

*Bill in Equity to quiet Title to Land.*

1. *Indefinite description of land in deed; when it can be aided by parol evidence.*—When lands conveyed in a deed are therein described only by the number of the sections, township and range, without reference to the county, state, land district or government survey in which the lands lie, such deed is not absolutely void for uncertainty, and the insufficient description may be aided by parol evidence showing that when the conveyance was made the grantor owned and resided on lands in a given county in this State, which corresponded to the numbers of those employed in the conveyance, and owned and claimed no other lands falling within the description given; and when the deed

[Webb v. Elyton Land Co.]

of conveyance is thus aided by such proof, it should be pronounced a valid conveyance of said lands.

2. *Defense of bona fide purchaser for value without notice to a bill to quiet title; what must be shown.*—Where, to a bill filed to set aside and vacate a deed as a cloud upon the title of the complainant, the defendant defends upon the ground that he is a *bona fide* purchaser for value and without notice, he must aver and prove, distinctly and without equivocation, (1), that he is the purchaser from one in actual or constructive possession, who was seized or claimed to be seized of the legal title, as distinguished from an equitable title; (2), that he purchased the lands in good faith; (3), that he parted with value by paying money or other valuable things, assuming a liability or incurring an injury; and, (4), that he had no notice of complainant's equity, and knew of no fact calculated to put him on inquiry before the purchase, or at or before the time he parted with the valuable consideration.

APPEAL from the City Court of Birmingham, in Equity. Heard before the Hon. H. A. SHARPE.

The bill in this case was filed by the appellee, the Elyton Land Company, against the appellant, Norman Webb, to have a deed executed to the respondent by W. W. Brown set aside and vacated as a cloud upon the title of complainant to certain described lands. The facts of the case are sufficiently stated in the opinion.

On the final submission of the cause, on the pleadings and proof, the chancellor granted the relief prayed for by the complainant, and ordered the deed from Brown to the respondent, Webb, set aside and vacated. The respondent appeals, and assigns this decree as error.

BROOKS & BROOKS and SMITH & LOWE, for appellant.—
1. The deed from Brown to Bagley was void for uncertainty. The description contained in such deed can not be aided by parol evidence.—*Brandon v. Leddy*, 67 Cal. 43. The legal title to land does not pass unless it is so described that it can be identified by referring to or following the description as given in the deed.—*Dickens v. Barnes*, 79 N. C. 490 ; *Coker v. Roberts*, 9 S. W. Rep. 666.

2. The contention of the appellee that from the face of the Brown-Bagley deed no doubt or uncertainty were caused in the mind of the court as to the particular land described by said deed, can not be sustained. In such deed the ambiguity is one of which the court takes judicial

knowledge. The court can not judicially know what parcel of land was intended to be conveyed in said deed. *Chambers v. Ringstaff*, 69 Ala. 144; *Miller v. Travers*, 8 Bing. 244.

3. Where the ambiguity is such that the perusal of the instrument shows plainly that something more must be added before the reader can determine what one of several things is meant, the rule is inflexible that parol evidence can not be adduced to support the defense.— *Palmer v. Albee*, 50 Iowa 432; *Brown v. Guice*, 46 Miss. 299; *Mann v. Mann*, 14 Johns. 1.

4. In giving the construction to the deed, the court is necessarily confined to the terms of the instrument itself, the object being to ascertain the intention of the parties as expressed by the language used, and not the intention which may at the time have existed in their minds.—*Fowler v. Black*, 136 Ill. 363. Parol evidence of concomitant facts and circumstances can not be looked to to import terms and conditions into the writings, nor to vary, add to, or take from the language employed.— *Dexter v. Ohlander*, 89 Ala. 269. Parol evidence is only allowed to aid in the construction of rules of doubtful meaning used in the writing, not to supply omitted words.—*Guilmartin v. Wood*, 76 Ala. 209; *Atty. General v. Shore*, 11 Simons 616; *Collender v. Dinsmore*, 55 N. Y. 200; *Norton v. Woodruff*, 2 N. Y. 152.

5. Each word of the Brown-Bagley deed when considered separately is free from ambiguity, and has a plain, common sense meaning; and external circumstances do not create the doubt as to the proper application of the words to the subject matter. The uncertainty of the deed is apparent not only to the judicial mind but to all persons familiar with land numbers, and it arises because of the failure to use additional words indicating in what county, State or land district the land is situated.

6. The property which complainant contends was conveyed by the Brown-Bagley deed was not described in the deed; and it can neither be identified by judicial knowledge nor by any reference in the deed to land marks or other objects by which it is intended to be ascertained. There is no more reason to allow the deed to be aided by extrinsic evidence than there is for substituting such unreliable evidence for the written

evidence which law requires; than there is for substituting any other parol evidence.—*Knox v. King*, 36 Ala. 367; *Carter v. Shorter*, 57 Ala. 257; *Eckford v. Eckford*, 53 N. W. Rep. (Iowa) 345, s. c. 58 N. W. Rep. 1093; *Webb v. Mullins*, 78 Ala. 111.

7. The deed from Brown and wife to Webb is a warranty deed.—Code of 1886, § 1839; *Jones v. Reese*, 65 Ala. 134; *U. S. v. California &c. Land Co.*, 148 U. S. 31; *Smith Bank*, 21 Ala. 125; *Parker v. Parker*, 93 Ala. 80; 1 Devlin on Deeds, §§ 27, 837; *Garrett v. Christopher*, 15 Amer. St. Rep. 850; *Sweet v. Green*, 1 Paige Ch. 476; *Bush v. Cooper*, 59 Amer. Dec. 270; *Brown v. Banner Co.*, 37 Amer. Rep. 105; *Touchard v. Crow*, 81 Amer. Dec. 108; *Richardson v. Levi*, 3 S W. Rep. 444.

8. Webb was a *bona fide* purchaser. A subsequent purchaser, even under a quit-claim deed for value and without notice is protected against prior and unrecorded deeds.—*Moelle v. Sherwood*, 148 U. S. 21; *U. S. v. California &c. Land Co.*, 148 U. S. 31; *Eoff v. Irvine*, 32 Amer. St. Rep. 609; *McNitt v. Turner*, 16 Wall. 352.

9. Complainant relies upon its alleged possession as evidence of notice. The proof of the possession must be clear and convincing; and the possession must be open, visible, notorious, continuous, and exclusive in order to be sufficient to put the purchaser on inquiry.—2 Devlin on Deeds, §§ 760, 769; 2 Pom. Eq., §§ 620, n., and 621, 622; *McMechan v. Griffing*, 3 Pick. 149; *Fitzgerald v. Williamson*, 85 Ala. 585; *Townsend v. Little*, 109 U. S. 504; *Elliott v. Lane*, 48 N. W. Rep. 720; *Meehan v. Williams*, 48 Pa. 238; *Smith v. Yule*, 89 Amer. Dec. 167; *McCarthy v. Nicrosi*, 72 Ala. 334; *Watt v. Parsons*, 73 Ala. 202; *Brown v. Volkening*, 64 N. Y. 76; Sedgwick Wait on Trial of Title to Land, § 735; *Olewine v. Messmore*, 128 Pa. St. 470; *Billington v. Welsh*, 5 Binn. 132, 6 Amer. Dec. 406; *Pope v. Allen*, 90 N. Y. 298.

10. Webb can not be held not to be a *bona fide* purchaser because he purchased from one out of possession, because to so hold would be in direct conflict with numerous cases holding that the actual, open, notorious, continuous and exclusive possession by the prior purchaser under his unrecorded deed, and which visibly existed at the time of the second purchase, would be sufficient only to put the subsequent purchaser on inquiry. It is only when the possession of the occupant would, but

for the possession of his deed, amount to the disseizin by his grantor, that it amounts to implied notice.—*Smith v. Yule*, 89 Amer. Dec. 167 ; *McMechan v. Griffing*, 3 Pick. 149 ; *Fitzgerald v. Williamson*, 85 Ala. 585; *Elliott v. Lane*, 48 N. W. Rep. 720 ; *McCarthy v. Nicrosi*, 72 Ala. 334; *King v. Paulk*, 85 Ala. 186; *Caldwell v. Pollak*, 91 Ala. 353 ; *Meehan v. Williams*, 48 Pa. St. 238; *Brown v. Volkening*, 64 N. Y. 76.

11. The result of mere inadequacy of price and possession (if any) by the prior purchaser, is that they put the subsequent purchaser on inquiry. Every person who is put on inquiry is not thereby charged with notice.—*McGhee v. Gindrat*, 20 Ala. 95 ; *Williamson v. Brown*, 15 N. Y. 358; *Mills v. Smith*, 8 Wall. 27 ; *Tompkins v. Henderson*, 83 Ala. 391.

12. The burden of proof, after Webb showed that he paid value for the land, shifted to the complainant, and it then devolved on it to show by clear, convincing and unquestionable evidence that Webb had knowledge of facts sufficient to put him on inquiry, and that if he had pursued the inquiry in the direction suggested by the known facts, he would have discovered the alleged prior deed from Brown to Bagley.—*Barton v. Barton*, 75 Ala. 400 ; *Boggs v. Varner*, 6 Watts & S. 469 ; *Anthony v. Wheeler*, 17 Amer. St. Rep. 281 and note ; *McMechan v. Griffing*, 3 Pick. 149 ; *M. & M. R. R. Co. v. Felrath*, 67 Ala. 191 ; *Ind. & Ill. Cen. R. Co. v. Sprague*, 13 Otto 756 ; *Williamson v. Brown*, 15 N. Y. 354 ; Bigelow on Frauds, 388 ; *Mills v. Smith*, 8 Wall. 27.

ALEX. T. LONDON and HEWITT, WALKER & PORTER, *contra.*—1. The deed from Brown to Bagley under which the complainant in this case claimed, was not void for uncertainty. The description of the land conveyed therein by numbers of section, township and range only, could be aided by parol evidence showing that the grantor in said deed owned land corresponding to such numbers in the county and State, and owned no other such land, and such evidence rendered the deed valid.—*Chambers v. Ringstaff*, 69 Ala. 144 ; *Black v. Pratt C. & C. Co.*, 85 Ala. 504 ; *DeJarnette v. McDaniel*, 93 Ala. 215.

2. Webb was not a *bona fide* purchaser of the lands in controversy without notice. A *bona fide* purchaser is one who purchases the legal title in good faith and parts

with value by paying money or some other valuable thing; assumes a liability or incurs an injury; has no notice of any equity in the person claiming the property, and knows of no fact to put him on notice; and the purchase must be made from one in actual possession, or constructive possession, who was or claimed to be seized of the legal title. The purchase must be of legal estate. It must be made in good faith. The purchaser must have paid something of value for the property, and the purchase must have been made from one in the possession, actual or constructive, and one who held or claimed to hold the legal title.—*Craft v. Russell,* 67 Ala. 9; *Hooper v. Strahan,* 71 Ala. 75; *May v. Wilkinson,* 76 Ala. 543.

3. The deed by Brown to Webb being in equity a quit-claim deed, Webb can not claim as a *bona fide* purchaser. *Lumpkin v. Adams,* 11 S. W. Rep. 1070; *Oliver v. Piatt,* 3 How. 333.

4. To constitute a *bona fide* purchaser, the purchase must have been for a valuable consideration. One holding under a mere voluntary deed is not a *bona fide* purchaser. Where the vendee pays but a nominal consideration for the property conveyed to him, in law and equity he holds under a voluntary conveyance and not under a deed for a valuable consideration.—*Ohmer v. Boyer,* 89 Ala. 278; *Houston v. Blackman,* 66 Ala. 564; *Moorer v. Moorer,* 87 Ala. 545; *Goodlett v. Hansell,* 66 Ala. 160; *Kinnebrew v. Kinnebrew,* 35 Ala. 637; *Worthy v. Caddell,* 76 N. C. 82; *Marks v. Matthews,* 7 S. W. Rep. 303; *Dillon v. Shugar,* 35 N. W. Rep. 509; *Spicer v. Waters,* 65 Barb. 227; *Alden v. Trubee,* 44 Conn. 459; *Anderson v. Nicholas,* 28 N. Y. 603; *Eck v. Hatcher,* 58 Mo. 239; *McNary v. Southworth,* 58 Ill. 475; *Hoppin v. Doty,* 25 Wis. 573; 2 Devlin on Deeds, § 814.

5. Webb was not a *bona fide* purchaser, because at the time of the purchase the vendor was not in possession of the land and exercising such acts of ownership over it as the land was capable of.—*Chambers v. Ringstaff,* 69 Ala. 144.

HEAD, J.—This is a bill by the Elyton Land Company against Norman Webb to quiet titles to the S. E. ¼ of N. W. ¼ section 6, township 18, range 2 west, in Jeffercon county, Ala. The land lies on what is known as South Highlands, in and adjacent to the city of Birming-

ham.  Many years ago, Elijah Brown died owning a
body of about four hundred acres of land, including that
in controversy.   He resided on that tract all his life, or
for many years.   He left his widow, Nancy Brown and
a son, W. W. Brown, besides other children.   By his last
will he devised all his land to his widow for life, with re-
mainder,  in  fee,  to  his  son,  W. W. Brown.   Both
devisees  still  survive.   On  January  10,  1870, W. W.
Brown conveyed his estate in the land in controversy, with
warranty,  to  Joab  Bagley.   On September 24th, 1872,
Bagley and wife sold and conveyed to the complainant,
the  Elyton  Land  Company.   On November, 15th, 1886,
the  widow,  Nancy  Brown, conveyed her estate in this
land to the complainant.   On July 23d, 1883, W. W.
Brown and wife executed a deed to the forty acres in dis-
pute to said Norman Webb, for the consideration of one
hundred dollars, purporting to convey the entire fee; and
he, Webb, now asserts  title by virtue of this deed to an
estate in remainder, dependent upon the life estate of
Nancy Brown, paramount to the title of the Elyton Land
Company.   There are three defenses set up in the an-
swer, and relied upon on the trial :   First :   That the
deed of W. W. Brown to Joab Bagley, relied upon by the
complainant, is in fact no deed, but a forgery ; and if
signed by Brown, there was no  attesting witness nor ac-
knowledgment, in consequence of which the instrument
is inoperative as a conveyance.   Second :   That the deed
is void on its face for  insufficiency of description of the
land, which is described only by sectional subdivision,
township and range, omitting the county, State and land
district, in which the land is situated.   Third :   That
the respondent is a purchaser for valuable considerations
without notice.

1.   We have carefully examined the evidence, and
have no doubt that the deed to Bagley is genuine, and
was executed, attested by a subscribing witness, and de-
livered, on the day of its date.  This is so well established
that it is unnecessary to go into the evidence  or enter
upon any discussion of it.

2.   The Bagley deed possesses the infirmity in the de-
scription of the land, above mentioned.   The evidence
shows, without dispute, that W. W. Brown, at the date
of the conveyance, owned the land, lying in Jefferson
county, Alabama, conforming, in point of section, town-

ship and range, to that described in the deed ; and had owned it since the death of·his father, years before ; and it is shown by the testimony of a number of witnesses, his relatives and intimate acquaintances of long standing, that he was never known to own, or claim to own, any lands in any other county or State. He had lived all his life very near to the land in dispute, in Jefferson county, and his grantee, Bagley, was an old resident and citizen of that county, owning lands therein located, not remote from the land in question. These facts raise the question of law, whether or not, the insufficiency apparent upon the face of the deed, may be cured by reference to the extrinsic circumstances stated. We feel constrained to hold that the question has been settled by past adjudications of this court, whatever doubts may be entertained of the correctness of the rule which those decisions declare. In *Chambers v. Ringstaff*, 69 Ala. 140, the very question arose upon a mortgage of realty, and after full discussion by Chief Justice Stone, it was expressly held, that when it was admitted or found by the jury that the mortgagor owned the lands in dispute, when the mortgage was made, in the absence of other proof, that she owned or claimed other lands falling within the description, it then became the duty of the court to pronounce the mortgage a valid conveyance. This conclusion was reached without consideration of the fact, that the mortgage showed on its face, that it was executed in Montgomery county wherein the lands in dispute lay and that the parties resided in that county.

In *Meyer Brothers v. Mitchell*, 75 Ala. 475, Judge SOMERVILLE *arguendo* and in approval of *Chambers v. Ringstaff*, 69 Ala. 140, *supra*, used the following language, treating of ambiguities : "The general rule everywhere recognized is that, mere verbal declarations as to what was intended are not admissible in explanation of the terms of the writing itself. A just exception to this rule, however, is found in parol evidence going to *the identification of the subject-matter*, a principle which seems to have been much favored by the past decisions of this court. In *Chambers v. Ringstaff*, 69 Ala. 140, a description of land in a mortgage void on its face for ambiguity was allowed to be aided by oral evidence showing that the grantor owned and resided on certain lands in this State

which were known and described by the same numbers
as those employed in the mortgage. The ambiguity
there arose from the fact that the description employed
in the instrument was on the face of it equally applicable
to many tracts of land located in various government sur-
veys. The conclusion was reached upon the principle
that parol evidence was admissible to show the surround-
ing or attendant circumstances under which the con-
tract was made, and to identify the subject-matter to
which the parties referred.''

In *DeJarnette v. McDaniel,* 93 Ala. 215, the description
of the land in the mortgage was of the same character
as that in the present deed. The court said : ''The
plaintiffs objected to the introduction of the mortgage on
the ground of uncertainty and ambiguity in the descrip-
tion. It was then proved that at the time the mortgage
was executed, and for several years before that time,
Mrs. Dicey DeJarnette lived on the land ; that she and her
son lived together upon it until his death in 1854, and
that she owned no other lands. This brought the ques-
tion directly within the rule declared in *Chambers v.
Ringstaff,* 69 Ala. 140. The circuit court did not err in
receiving the mortgage deed in evidence.''

We have given due consideration to the elaborate ar-
gument and array of authorities presented to us by the
appellant's counsel, impeaching with much force the
rule declared in these decisions. We realize the diffi-
culty and doubt which surround the question. There
is contrariety of decision upon it in the States. The
briefs collect the authorities. The rule we have adopted
commends itself for its conversatism and justice. How-
soever vulnerable it may be to the attack of technical and
refined principles of law upon the subject of ambiguous
writings, we are not so well satisfied that it is unwise as
to be disposed to depart from it.

3.   The Bagley deed was not recorded until 1886, and
the appellant claims to be a *bona fide* purchaser of the
estate of W. W. Brown, in remainder, for value with-
out notice. His purchase was negotiated and his deed
procured by Tipton Bradford as his agent duly authoriz-
ed in the premises. Bradford was a practicing lawyer
in Birmingham, Ala. Brown lived in or just adjacent to
that city. Samuel Thompson living in Birmingham
was related by marriage to Brown. Bradford procured

Thompson, as a friendly act, to negotiate with Brown, for a deed. What occurred between Thompson and Brown appears in Thompson's testimony, and we give it as he gave it. He says : "I was authorized by Mr. Bradford to see Mr. Brown and ascertain what he would take for his interest and that of his mother in the said land, * * * and said Bradford told me that he wanted to buy Brown's interest in the land. He requested me to ascertain from said Brown what he would take for his interest in the land. I did, as his agent, ask W. W. Brown what he would take for his remainder estate in said land. Brown said that if he had any interest in the land he did not know it, and that he could not sell a thing he did not own. I returned to town and informed Mr. Bradford of my mission and its results, and Mr. Bradford requested me to again see Brown in regard to this transaction ; and within two or three days I again went to the storehouse of Mr. Brown, and again told him that Mr. Bradford said that the title of the land was in Mrs. Brown and W. W. Brown, and if he sold it, he would only be selling his interest if he had any ; and if he had no interest in the land, he could sell none but that he was willing to buy it, and take the risk of holding it. I asked Mr. Brown what he would take for his interest, and he said he would take one hundred dollars. Said Brown said that he had not known that his father had ever entered said land, or owned it, and that he never had claimed it, and never sold it. I did return and inform Bradford what Brown had said. Bradford said he would give him the one hundred dollars. * * * * * * I never interviewed said Brown but twice in behalf of Mr. Bradford, and on the second interview when Brown proposed to take one hundred dollars for his interest, I told him that Mr. Bradford would pay him $100 for his interest at any time that he would come to his office, and Brown promised me that he would come to Mr. Bradford's office the next day and make the deed and receive the money. My authority as such agent then ceased." On cross-examination by appellee's counsel, he stated : "At the time I called the second time at Brown's store, in the interest of Mr. Bradford, Brown disclaimed having ever known that his father ever owned the land, and stated that he had no interest in the land and that he could not sell a thing that

he did not own. I told him that he could give a quit-claim deed, and that if he had no interest in the land, it would convey none; it would only convey the interest he had; and that Mr. Bradford would accept such a deed and pay him $100 the amount he proposed to take for his interest. I reported to said Bradford the conver-sation had between myself and the said Brown, and in-formed Mr. Bradford that Brown promised to come over to his office the next day and make the deed." Brown's testimony is confirmatory of Thompson's statement of the interview. Bradford does not deny that Thompson reported to him the conversation. There is a discrepan-cy in the testimony of Bradford and Thompson as to the exact authority conferred by the former upon the latter, the former insisting that he told Thompson to negotiate for the purchase of Brown's estate in remainder, whilst Thompson puts it, that he was asked to see what Brown would take for his interest in the land. However this may be, it is clear upon the proof that the negotiation which actually took place, was for the purchase of Brown's interest only upon the basis of the execution of a quit-claim deed, and that Bradford was fully informed before the deed was executed, that such was the case. Shortly after Thompson reported to him, Bradford saw Brown on the street, and, as he puts it, stated to him, that he would give him $100 for his estate in remainder, and it was then arranged that Bradford would send the deed to Brown's house to be executed, which he did very soon, Bradford himself, in company with a notary, perform-ing the mission. The deed was presented to Brown and his wife, and was by them signed and acknowledged before the notary without the same be-ing read, so for as appears. The deed was written by Bradford and its words of grant are: "party of the first part have this day bargained, sold, quitclaim and con-veyed, and by these presents to bargain, sell, quitclaim and convey unto party of the second part," &c. It is an undisputed fact that Bradford when he made the trade and before, knew that Brown repudiated all right, title or interest in the land, and steadfastly maintained that he had nothing to sell.

In *Thames v. Rembert*, 63 Ala. 561, we said: "A *bona fide* purchaser entitled to protection against prior equi-ties or latent infirmities in the title of his vendor, who

31

is apparently seized, and in the transaction with him pretends to be seized, in fee of the legal estate, is one who in good faith, without notice, parts with value or changes his position for the worse under the belief that he is acquiring the legal estate. Good faith and a valuble consideration are the essential elements of a *bona fide* purchase a court of equity will not disturb. The two must concur.''

And in *Craft v. Russell*, 67 Ala. 9, we said : "A plea put in by a defendant, claiming to be a *bona fide* purchaser for value without notice, in order to be available as a protection against a prior equity or conveyance asserted by the complainant, must aver clearly, distinctly and without equivocation the following facts : 1. That he is the purchaser of the legal as distinguished from an equitable title ; 2, that he purchased the same in good faith ; 3, that he parted with value as a consideration therefor by paying money or other thing of value assuming a liability or incurring an injury ; 4, that he had no notice and knew no fact sufficient to put him on inquiry as to complainant's equity either at the time of his purchase, or at or before the time he paid the purchase money or otherwise parted with such value."

In *Hooper v. Strahan*, 71 Ala. 75, we said : "The rule is settled in this State, that in such cases, it is required of a defendant, who is a sub-purchaser, to aver in his plea or answer   *   *   *   *   the following facts : 1. That he is a purchaser from one in actual or constructive possession, who was seized or claimed to be seized of the legal title, at the same time briefly setting out substantially the contents of the deed of purchase with date, consideration and parties ; 2, that he purchased in good faith ; 3, that he parted with value   *   *   *   *;   4, that he had no notice," &c.

In *May v. Wilkinson*, 76 Ala. 543, we again said, that he must show that he was a purchaser from one in actual or constructive possession who was seized, or claimed to be seized, of the legal title.

The present record gives much general history which it seems to us, in connection with the foregoing facts, bears upon the good faith of the appellant in making the purchase in question. In 1871 the Elyton Land Company purchased some 5,000 acres of land with a view of building a city, and upon which is now the city of

Birmingham. The city constantly grew up to the time of Webb's purchase in July, 1883, when it had a population numbering about 10,000. This land was surveyed and laid off into streets, avenues, blocks and lots; large maps thereof showing the company's possessions were made and suspended upon the walls of the company's office, upon which were delineated the streets, avenues, blocks and lots aforesaid. These maps embraced the land in controversy marked off by border lines, but did not show until later the streets &c. thereon. The company's business was to sell their lots, and in the development of the city, up to the time of Webb's purchase, sold very many of them, quite a number of them contiguous to the land in controversy. The maps were always used and referred to in making these sales. Whenever a sale was made, the name of the purchaser was written upon the face of the lot on the map. The map showed the section, township and range. A casual examination would not fail to discover that the lands in controversy were shown thereon. Prior to July, 1883, Webb purchased several lots from the company, one located on South Highlands, not far from the land in controversy, and making his purchases, used and referred to this map, hanging on the walls in the company's office; and there is testimony going to show that he was frequently in the company's office examining the maps to locate lots, with a view of purchasing. About a year before, to-wit, in August, 1882, he purchased from the owner the forty acres adjoining and south of the land in question, and he was over there at least once, looking at the lands in that locality. We think the circumstances show that Webb must have known that the Elyton Land Company claimed and owned extensive possessions, embracing not only lands in the corporate limits of the city, but extending far beyond those limits; that he knew its business and its manner of conducting it, and knew its possessions were shown on said maps. Bradford had been a practicing lawyer in the city for a number of years. There are strong indications, in the record, that he was wont to give attention to land trading. Indeed, the record brings to the mind an intimate intercourse between him and the real estate agents. It is passing strange if he did not know the part enacted by the Elyton Land Company in the building and growth

of the city of Birmingham ; the fact that it claimed large possessions in and around the city ; the business it was engaged in and its manner of conducting it, the existence and use made of the maps, &c. Yet, though the appellant alleges great diligence in the investigation of the title, he and Bradford abstained from all investigation in that direction. Again : many years before the purchase in question, several colored persons purchased, without conveyance, small parcels of this land from Joab Bagley, built their cabins thereon and lived in them from then until long after July, 1883. Neither Webb nor Bradford, according to their testimony, made any inquiry of these persons by what claim they held possession.

We stated the rule above, that a *bona fide* purchaser without notice entitled to protection &c. must have purchased from one in the actual or constructive possession, who was seized or claimed to be seized of the legal title. Brown, as we have seen, was not, in fact, seized of the land, for he had conveyed to Bagley. We have seen, also, that he did not claim to be seized, but protested that he had no title, and that he could not sell that which he did not have. The evidence leaves no room for doubt that the bargain negotiated by Thompson for Bradford was for the interest of Brown in the land, whatever it might be, and that was the bargain, which was reported by Bradford, and so far as Brown understood, which was concluded with Bradford. Protesting as he did, whenever approached, against selling that which he did not own, it can not be conceived that he would have entertained the idea, for a moment, of executing, for the consideration of $100 a deed with covenants of warranty. We need not decide, upon the face of the deed, what its effect is, whether a warranty or mere quitclaim. If it was before us for enforcement of its supposed covenants of warranty, we might possibly hold that the insertion of the word "quitclaims" did not affect the covenants implied by the words "bargain" and "sell." But that is not the question before us. It is a question of notice and good faith asserted as a protection, in equity and good conscience, by one who has made a purchase. The allegations of the bill as set forth in the fifth section thereof are substantially sufficient, waiving multifariousness, to justify a prayer for

the reformation of this deed, converting it into a quitclaim merely. The parties are at issue upon these allegations. The evidence in support of them was admissible. Excepting the averment that Webb was expressly informed, that Brown had sold to Bagley, we are satisfied from the evidence that the allegations are true.

We are therefore authorized, for the purpose for which the issue was made, namely, for the purpose of showing that Webb was not a *bona fide* purchaser, without notice, to treat the deed as a mere quitclaim.

Upon these considerations we have no hesitation in declaring that Webb was not a *bona fide* purchaser for value, without notice.

Affirmed.