(106 So. 150)

AIKEN et al. v. McMILLAN.    (1 Div. 287.)

(Supreme Court of Alabama.   Oct. 15, 1925.)

1. Vendor and purchaser ⬅➡231(9)—Land conveyed, recorded in county thereafter divided, does not have to be recorded in new subdivision to give notice.

Conveyance, recorded in county which was subsequently divided, does not have to be recorded in new subdivision wherein it was then located, as persons afterwards dealing with the lands are charged with notice of its history and of the registration laws in force before the separation.

2. Evidence ⬅➡343(3)—In absence of showing of date of filing copy of deed held admissible.

Where conveyance was made before subdivision of county, copy thereof was admissible in evidence in absence of filing date of conveyance, in the certificate, as against the objection that it was not recorded in new subdivision where land was located.

3. Evidence ⬅➡43(2) — Supreme Court takes judicial knowledge of records in case on former appeal.

Supreme Court takes judicial knowledge of records in case in Supreme Court on former appeal.

4. Evidence ⬅➡343(3)—Copy of original conveyance not authorized by record held inadmissible.

If certified copy offered in evidence is only copy of a copy, or was mere conclusion of an official of the legal effect of document, or record, or was copy of original conveyance not authorized of record or made available as evidence, it was properly rejected.

5. Evidence ⬅➡343(3)—Record of translation of copy of original, not in evidence, and not shown to have been validly executed, held inadmissible.

Under Code 1907, § 3382, record of translation of copy of original instrument, not in evidence, and not of record, and not shown to have been validly executed, is inadmissible in evidence.

6. Territories ⬅➡3 — Common-law rule under Spanish sovereignty was changed by ordinance of 1787 for government of territory of United States.

Rule of common law was changed by ordinance of 1787 for government of territory in United States northwest of River Ohio, which was made applicable to the instant territory by reason of Articles of Cession and Agreement (2 U. S. Stat. p. 69, par. 1; 1 U. S. Stat. p. 549, par. 6) between United States and state of Georgia extending the ordinance (Code 1923, p. 14) over territory ceded by latter to former.

7. Evidence ⬅➡318(7)—Recitals in certificate of translation of Spanish deed held inadmissible as hearsay.

Where recital in certificate to translation of Spanish deed does not disclose identity of

translator, and there is no official seal fixed, recitals are hearsay, and admission of certificate in evidence violates elemental rules of evidence.

**8. Evidence ⚖═372(12)—Instrument held not admissible as authorized translation of ancient document.**

An instrument *held* not admissible as an authorized translation of an ancient conveyance or document; the unverified certificate of translator showing no official character; and there being no evidence of what such individual purported to translate.

**9. Evidence ⚖═47—Supreme Court takes judicial notice of appointment of official translator by Governor.**

Supreme Court takes judicial knowledge of official action of Governor in appointing translator and of his qualification in that office, but judicial knowledge stops short of knowledge of specific acts of translator or that certain individual was official translator, where his certificate did not purport to be official and the record did not show official identity.

**10. Evidence ⚖═44—Absence of informing certificate that translator of deed was official translator is significant as Supreme Court cannot take judicial knowledge of fact that it does not in fact judicially know.**

Absence of informing certificate of translation of deed that translator was official rather than individual translator is significant, since Supreme Court cannot take judicial knowledge of fact that it does not in fact judicially know.

**11. Evidence ⚖═372(10)—Copy of document in Spanish held not self-proving.**

Where there were no official translations of Spanish documents on date of alleged translation of Spanish deed, and Spanish memorials or concessions recited in deed not being contained in official translations made and filed in office of Secretary of State, such document is not self-proving.

**12. Evidence ⚖═372(10)—Circuit court held not in error in refusing to admit copy of Spanish deed in evidence.**

Circuit court properly rejected deed, where it was not sufficiently informed that original document from which translation of deed was made was properly executed and admitted to record in accordance with Aiken's Dig. pp. 354, 355, § 5, and copy offered as evidence was not shown to be self-proving as muniment of title or was not an ancient conveyance within Code 1907, § 3382, or that it was offered as interpretation of original as provided by Code 1907, § 4010.

**13. Deeds ⚖═111—Intention of parties, as shown by acts, controls in case of latent ambiguity in description of land.**

Where description of land in conveyance presents latent ambiguity to extent only that it may apply to either of two pieces, intention of parties to conveyance has been ascertained under the rule by looking to their acts, and their competent and material declarations in

possession and deeds of doubtful meaning have been resolved in favor of possession.

**14. Deeds ⚖═38(1)—Grant will not fail for ambiguity of description, if it can be identified under surrounding facts.**

Grant will not fail for ambiguity of description, if there is sufficient or particular description which, under surrounding facts, will sufficiently identify land intended to be conveyed.

**15. Evidence ⚖═353(1)—Exclusion of mesne conveyance under deed excluded held not error.**

Where deed was excluded from evidence, there was no error in excluding mesne conveyances thereunder, where offered as muniments of title and not as color of title.

**16. Evidence ⚖═370(4)—Grantor must have legal title to lands conveyed in order that conveyance may be received as muniment of title.**

When one relies on conveyance from another as muniment of title to avail anything, there must be evidence that at time of conveyance grantor had legal title to lands sought to be conveyed.

**17. Evidence ⚖═274(1)—Declarations of owner and possessor of land competent to show boundaries.**

Declarations of one of owners who was in possession of land were competent to show boundaries thereof.

**18. Adverse possession ⚖═114(1)—Jury held authorized to find adverse possession.**

In action for trespass, evidence *held* to justify finding of adverse possession.

**19. Adverse possession ⚖═115(4)—Question of adverse possession properly left to jury.**

In action for trespass in removing timber from property, evidence *held* to be such as to make jury question as to whether the 10-year statute of adverse possession had run.

**20. Adverse possession ⚖═71(2)—Evidence ⚖═460(4)—Acts of parties considered by jury in determining ambiguity in description of land.**

If there is ambiguity in description of conveyances, acts of parties and their interpretations of such ambiguity will be taken into consideration by jury, and deed purporting to convey land will give color of title to possession taken under it, even though such deed be void as legal conveyance.

**21. Adverse possession ⚖═71(2)—Acts of ownership under instrument, meaning of which is ambiguous, may ripen into adverse possession.**

When possession is taken and held under instrument, construction of which is ambiguous, and such as may be explained, and which parties intended as deed to land described, unequivocal acts of ownership and acts of adverse possession, without objection for time of statute, ripen into adverse possession.

⚖═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**22. Adverse possession** ⟨⟩85(2)—**Tract books admissible to show color of title.**

Admission of tract book to show patent to lands of which there was dispute in ownership was competent as evidence tending to show color of title under which party claimed in good faith.

**23. Evidence** ⟨⟩488—**Permitting adverse claimants to timber land to testify as to values of timber proper.**

Permitting adverse claimants to timber land to testify as to values of timber thereon *held* proper.

**24. Evidence** ⟨⟩508—**Witness held properly permitted to testify as to result of cutting gum timber without deadening.**

Witness, shown to be proper expert in timbering, *held* properly permitted to tell result of cutting gum timber without deadening it, and reason for this method of cutting.

**25. Witnesses** ⟨⟩37(1)—**Permitting witness to testify that person had counted trees taken held proper.**

Showing by witness that another person had counted stumps showing trees taken therefrom, and trees cut and not removed, *held* proper, where it was shown that witness had been with person during entire count, and located the locus of cut area on land made subject to inquiry.

**26. Evidence** ⟨⟩471(2)—**Trial** ⟨⟩62(2)—**Parties not in possession cannot testify that immediate ancestor claimed land, in absence of muniment of title.**

Not being in possession and in absence of muniments of title, defendants were properly not permitted to testify that their immediate ancestors claimed tract of land over which there was disputed ownership; it being a conclusion, and also not competent rebuttal of plaintiff's testimony that he had not heard of any adverse claim.

**27. Appeal and error** ⟨⟩237(2), 1050(1)—**Case will not be reversed because of admission of improper evidence without objection which was not prejudicial.**

Case will not be reversed because of permitting improper testimony, where there was no motion to exclude, and evidence was not prejudicial.

**28. Trespass** ⟨⟩45(2)—**Tract book held admissible as link in chain of title.**

In action for trespass, where plaintiff claimed under two different grantors, admitting of tract book, showing patent in one of grantors, was proper as being link in chain of title, in view of Code 1907, §§ 3979, 3980, 3982.

**29. Trial** ⟨⟩116—**Argument from tract book as being color of title held not prejudicial.**

In action for trespass, permitting counsel for plaintiff to argue from tract book showing patent to one of grantors *held* to be without prejudicial error.

**30. Appeal and error** ⟨⟩1067—**Refusal to charge that patent was not issued or confirmed held harmless.**

Refusal to charge that patent to plaintiff's grantor was not issued or confirmed was proper, where defendants had not connected land therein with their grantor's title; hence the only effect of patent was to divest government of its title, and ruling was harmless.

**31. Trial** ⟨⟩194(1)—**Instruction charging that certain fact was proved held improper.**

Requested instruction requiring court to charge that certain fact was proved *held* improper.

**32. Trespass** ⟨⟩19(1)—**Affirmative instructions on question of title to timber held properly refused.**

In action for trespass for removing timber, affirmative charge on theory that it was not shown that timber was there when deed was made to plaintiffs *held* properly refused, since instrument was not a sale of merchantable timber then standing on land, but sale of land with reservations.

**33. Deeds** ⟨⟩143—**Language speaking in futuro will be given effect, if not contrary to law.**

Intent of language of reservation in deed which speaks in futuro will be given effect, if not contrary to law.

**34. Trespass** ⟨⟩67—**Whether timber was on land at time of transfer held for jury.**

In action of trespass for conversion of timber, *held*, that question of whether timber was on land when deed was made from plaintiff's grantor was for jury.

**35. Appeal and error** ⟨⟩927(7)—**In giving of affirmative charge, plaintiff is allowed every favorable inference from evidence.**

Every inference favorable to plaintiff under any tendency of the evidence must be taken as true in giving of affirmative instructions.

**36. Trespass** ⟨⟩19(8)—**Owner of trees owner of land in action for statutory penalty.**

Under Code 1907, § 6036, owner of trees is the owner of land in action for statutory penalty for trespass on land and for cutting and removing timber.

**37. Trial** ⟨⟩174—**Court will not be put in error for refusing charge when point on which it was asked was not brought to its attention.**

Trial court will not be put in error for refusing general charge predicated upon variance or immaterial omission in evidence, unless it appears that the point upon which it is asked was brought to attention of trial court.

**38. Trial** ⟨⟩143—**Jury judge of fact under conflicting tendency of evidence.**

Where there is conflict in respect to tendency of evidence, jury is judge of fact under such conflicting tendency.

**39. Trespass** ⟨⟩30—**Connection with wrongful acts essential.**

In action for wrongful taking of timber, if sister was not connected with trespass, she

should not be penalized in damages for wrongful acts of her brother and those laboring under his direction causing the damages sued for.

**40. Trespass ☜67—Liability for trespass held for jury.**

In action for conversion of timber, *held*, question of liability vel non of one of defendants was properly submitted to jury.

**41. Adverse possession ☜13—Given charge in action for trespass held proper.**

In action for trespass for conversion of timber, charge that law only required such acts on and use of land as owner would commit in reference to his own land, and, if these acts are open, notorious, continuous, hostile, under claim of right, it may ripen into title, *held* proper.

**42. Adverse possession ☜23—Given charge in action for trespass held proper.**

In action for trespass for taking of timber, charge that mere timber operations on land each year may not amount to adverse possession as will ripen into title, yet, if operations were conducted in accordance with neighborhood custom, and land was used in every way it could be, and that when party was absent from land he always left evidences showing intention to return, that such is adverse possession as will ripen into title in 10 years, providing it is open and notorious, *held* proper.

**43. Trespass ☜57—Recovery not limited to nominal damages.**

In action for trespass for taking of timber, where evidence was that timber had substantial value both while standing and after being cut, *held*, that recovery thereon could not be limited to nominal damages.

**44. Trial 194(1)—Charge that controverted fact was established held improper.**

Charges to effect that stated controverted fact was established by evidence are improper, since jury is trior of such fact.

**45. Trial ☜208—Charge in action for trespass held properly refused.**

In action for trespass for taking of timber, charge that jury could not consider any testimony in regard to cutting of timber on land by plaintiff or any person claiming under him after date of deed from plaintiff's grantor *held* properly refused.

**46. Logs and logging ☜35—Trover maintainable by one not in possession of land from which timber is taken.**

Trover may be maintained by one not in possession of land from which timber is taken, as against one unlawfully withholding or converting the same.

Appeal from Circuit Court, Baldwin County; John D. Leigh, Judge.

Action by Benjamin F. McMillan against Norma Aiken and John G. Aiken. From a judgment for plaintiff defendants appeal. Affirmed.

The following is a copy of the map of the lands involved, referred to in the opinion of the court:

Charges 3 and 4, given at plaintiff's request, are as follows:

"(3) The court charges the jury that the law only requires such acts on and use of the land as the owner would commit in reference to his own land and if these acts are open, notorious, continuous, exclusive and hostile under claim of right, it may ripen into title.

"(4) The court charges the jury that, while mere timber operations on land each year may not amount to such adverse possession as will ripen the title, yet if these timber operations were conducted in accordance with the neighborhood custom, and the land was used in every way it could be used, and that the party claiming possession when absent from the land always left on the land evidences of these operations showing an intention to return, this may amount to such adverse possession as will ripen into title in 10 years, provided it is open, notorious, visible, continuous, hostile, and exclusive."

Charge 43, refused to defendants, is as follows:

"(43) The court charges the jury that they cannot consider any testimony in regard to cutting of timber on the land involved in this suit by Benjamin McMillan or by any person claiming under him after the 14th day of September, 1898."

Harry T. Smith & Caffey, of Mobile, for appellants.

The court erred in excluding the deed of transfer from Louis Baudin to Joshua Kennedy, and documentary evidence of title offered by defendants. McMillan v. Aiken, 205 Ala. 38, 88 So. 135. The general affirmative charges requested by defendants should have been given as to all the counts of the complaint. Jones v. Myrick Lbr. Co., 191 Ala.

449, 67 So. 672; Miller-Brent v. Dillard, 201 Ala. 18, 75 So. 308; Wright v. Bentley Lbr. Co., 186 Ala. 616, 65 So. 353. Charge 22 was correct, and should have been given. Jones v. Myrick Lbr. Co., supra (charge A). Plaintiff could not recover under the count in trover for wrongful trespass of timber or trees. Howton v. Mathias, 197 Ala. 463, 73 So. 92. Testimony in regard to cutting timber after September 14, 1898, was inadmissible. Aiken v. McMillan, 201 Ala. 280, 78 So. 56. The tract book entry of the Francis Girard tract should have been excluded. McMillan v. Aiken, 205 Ala. 38, 88 So. 135; Nelson v. Weekley, 195 Ala. 1, 70 So. 661. The court should have instructed the jury as to the legal effect of the confirmation and patent to Louis Baudin. Earbee v. Craig, 1 Ala. 607; Long v. Rogers, 17 Ala. 540.

Brooks & McMillan, of Mobile, for appellee.

There was no error in excluding the deed from Baudin to Kennedy, and the documentary evidence of title offered by defendants. McMillan v. Aiken, 189 Ala. 330, 66 So. 624; Id., 201 Ala. 281, 78 So. 56; Id., 205 Ala. 35, 88 So. 135; Pond v. Minn. Ir. Co. (C. C.) 58 F. 448; Clements v. Taylor, 65 Ala. 363; O'Neal v. T. C. I. Co., 140 Ala. 378, 37 So. 275, 1 Ann. Cas. 319; Code 1907, §§ 3372, 3373; Caldwell v. Pollak, 91 Ala. 353, 8 So. 546; Supreme Court rule 45, 175 Ala. xxi. The affirmative charge as to the first count was properly refused. Code 1907, § 6036; circuit court rules 34, 35, 175 Ala. xxi, xxii; Knights, etc., v. Gillespie, 14 Ala. App. 493, 71 So. 67. Though a charge assert a correct proposition, if it is calculated to mislead or confuse, the giving or refusal is without error. McKleroy v. State, 77 Ala. 95. Charge 43 was properly refused. Code 1907, § 2454; Eagle-Phœnix Co. v. Gibson, 62 Ala. 369; Creagh v. Bass, 190 Ala. 135, 67 So. 288. The tract book entry was properly admitted. Code 1907, § 3979; Henry v. Brown, 143 Ala. 446, 39 So. 325; Carter v. Chevalier, 108 Ala. 563, 19 So. 798. A charge requiring the court to instruct that a certain fact was proved is improper. L. & N. v. Young, 168 Ala. 551, 53 So. 213,

THOMAS, J. Several phases of this case or controversies growing out of the land and timber therefrom, are discussed in McMillan v. Aiken, 182 Ala. 303, 62 So. 519; Id., 189 Ala. 330, 66 So. 624; Id., 201 Ala. 280, 78 So. 56; Id., 205 Ala. 35, 88 So. 135.

In this suit damages are claimed for trespass to land described specifically as the Francis Girard tract which lies south of Bayou Jessamine, for the wrongful taking of timber, and for the conversion of timber alleged to have been taken therefrom.

This controversy involves the rights of the respective parties as to the timber in and upon section 44, township 1 north, range 2 east, which was originally confirmed to Francis Girard. The land lying north and east thereof is section 40, which was confirmed and patented to Louis Baudin or his legal representatives. The map exhibited and the evidence show a conflict or an overlapping of a portion of the two areas. A portion of this map is shown in a former decision. 205 Ala. 35, 88 So. 135.

The insistences of plaintiff are that the land is incapable of habitation or cultivation, and that he had such actual possession as its nature would permit and as is required by law to ripen into adverse possession, it being wild and overflowed land; that he was properly permitted to introduce evidence of the record of title and of his acts of adverse possession in order to draw constructive possession of the whole tract as its legal owner, it not being in the adverse possession of another. That is to say, the insistence of appellee is that he has shown a record title to the conflict from both the Girard and Baudin sources, to all of the section from the Girard source, and that possession required to maintain the suit under the rule of adverse possession.

The appellants' possession is confined to going upon the land in the spring of 1913 and, during the period of high waters, cutting and removing the logs sued for, and immediately thereafter they departed therefrom. They seek to justify their acts under claim of title to the Baudin tract, whatever its area and geographic confines, and as embracing the conflict.

For convenient reference it may be here stated that the claim of record title of appellee as disclosed by the record is: Grant by the United States to Francis Girard, Tract Book, vol. 1, p. 20, on file in Baldwin county, specifically describing the land; confirmation by the United States to Francis Girard, as per map and commissioner's report of date October 30, 1843; survey of the Francis Girard claim as section 44, township 1 north, range 2 east, Exhibit A, by James H. Weakley, surveyor general of public lands in Alabama, surveyor's office, Florence, Ala., examined and approved August 12, 1846; testimony of Frank Girard showing heirship of the grantors in deed to Francis Girard, and heirship of Mrs. Thomas Greig and Joacquine Eslava, grantees in deed from the Baudin heirs to Edward Fisher and Augustine Olivia Fisher, the grantors in appellee's deed to G. W. Robinson and Ben McMillan, of the firm of Robinson & McMillan (this testimony of Frank Girard is to be found on page 17 of the record); the deed from Francis Girard heirs to Robinson & McMillan, dated May 15, 1884, and that from Edward and Olivia Fisher to Robinson & McMillan, dated October 14, 1880; the identity of the individuals composing the firm of Robinson & McMillan (testimony of B. F. McMillan);

the deed from Robinson & McMillan by the individual members of the firm and their wives to J. Pollock, dated August 21, 1884 (the evidence shows that J. and Jacob Pollock in the several instruments were one and the same person); declaration by Jacob Pollock that the land was held by him in trust to secure the debts of Robinson & McMillan, dated September 17, 1884; deed from J. Pollock & Co. to Stockton Lumber Company, dated July 13, 1887; deed from J. Pollock as trustee to Stockton Lumber Company, dated March 13, 1891; authorization by the Stockton Lumber Company, its stockholders, and directors, for the transfer of all of that company's assets to plaintiff appellee (testimony of B. F. McMillan is to that effect); deed from Stockton Lumber Company, its stockholders, and directors to B. F. McMillan.

The deeds in this chain of title sufficiently describe the land conveyed as section 44, township 1 north, range 2 east and section 49 lying west of it, and which tracts are included in the Girard grant. Thus is shown the title to the conflict in the plaintiff from the Girard grant or source and from and through Greig and Eslava, grantees in deed from the Baudin heirs. That deed is of date June 3, 1845, and the legal effect of the recitals of said deed was announced on former appeal. 205 Ala. 35, 88 So. 135.

Appellants having introduced in evidence the confirmation of the Louis Baudin grant to the legal representatives of Louis Baudin, offered the report of John B. Hazard and John Henry Owen, commissioners appointed under act of Congress March 3, 1827 (4 Stat. 239), confirming the grant under second section of Act of March 3, 1819 (3 Stat. 528), the patent dated October 11, 1838, subsequently issued to the legal representatives of Louis Baudin, in rebuttal appellee introduced said deed dated June 3, 1845 (heretofore adverted to), from the legal representatives of Louis Baudin to Thomas Greig and Joacquine Eslava, from whom appellee's grantors, the Girards and Fishers (under the testimony of Frank Girard), would inherit said land. On pages 133 and 134 of the record conveyance from Louis Baudin, Varice Nicholas, John and Clestine Campbell, Noble and Mathilda Johnson, Louisa and Delia Nicholas, of date June 3, 1845, is set out, describing the land as follows:

"All that tract or parcel of land situated in the county of Baldwin bounded and described as follows, to wit: Bounded on the north by Bayou Jessamine and extending towards the mouth twenty arpens, on the west by Bottle bayou, on the south by said Bayou Jessamine, and on the east by River Tensaw, which tract of land was confirmed to the parties of the first part by the second section of the act of Congress of the 3d of March, 1819, agreeably to the report of Commissioners John B. Hazard and John Henry Owen," etc.

[1, 2] In this appeal appellants' title is grounded on the copy of a translation of a deed of date June 29, 1839, to a Spanish grant from Louis Baudin to Joshua Kennedy, dated August 27, 1806, recorded in Deed Book Y, records of Mobile county, Ala., pp. 548, 549. The filing date in the probate office is omitted from the certificate before us. At the time of the execution of that conveyance the territory embracing these and other lands was a part of Mobile county, and was included with other lands from Washington county forming the county of Baldwin December 21, 1809. If, therefore, the conveyance was the subject of registration, and before said date duly recorded in Mobile county, where the land was then located, it was not thereafter required to be recorded in Baldwin county. After the formation of the new county, persons dealing with the lands composing the same had knowledge or notice of its history and of the registration laws in force before its separation from the county in which it was theretofore embraced. In the absence of the filing date of the conveyance, we cannot say there was objection to its introduction in evidence because not recorded in Baldwin county, where the land now lies. In this connection it should be noted that record in probate office for such conveyances was provided by the act of 1849–50, p. 28. Theretofore the record was required to be recorded "in any clerk's office" in the district. Aiken's Digest, p. 88.

[3] It is necessary to consider other objections made to the introduction in evidence of said conveyance. It must be borne in mind that we have no record of the original conveyance written in Spanish executed and recorded as provided by territorial law. Aiken's Dig. p. 88 et seq. The certificate of the judge of probate shows a conveyance of record on pages 548, 549, Deed Book Y, etc., of the probate office of Mobile county. The certified copy or record of the translation rejected as evidence was of several documents embraced in the certificate just referred to. These documents were heretofore the subject of consideration by this court. 189 Ala. 332, 66 So. 624. We take judicial knowledge of the records in the case in this court on former appeal. N. C. & St. L. v. Crosby, 194 Ala. 338, 70 So. 7. We are informed that the record in question constituted a proceeding as follows: A petition by Louis Baudin to Manuel Gayoso De Lemos, the Governor General of the Province (dated April 27, 1798), for land described as: Tract of land fronting on the north side of Bayou Jessamine and extending towards north below 20 arpens bounded on the west by Bottle bayou, on the south by Bayou Jessamine, and on the east by Tensaw river, in consideration of the clearing of same (189 Ala. 332, 66 So. 624); the order by Manuel Gayoso De Lemos,

Governor General of the province, June 28, 1798, declaring that petitioner had cultivated and occupied the land for many years, etc., and directing the commandant to establish him upon the spot which he selected, etc., bounded on Bayou Jessamine, and extending same 20 arpens in the memorial above set forth, it being vacant and without injury to a third party (189 Ala. 332, 66 So. 624), and the transfer or conveyance dated August 27, 1806, from Louis Baudin to Joshua Kennedy, covering "a certain tract of land containing 20 arpens front with the ordinary depth, bounded fronting Bayou Jessamine, and bounded on the west by Bottle bayou and Tensaw river, it being the same which I have acquired by virtue of a concession made to me by his excellency, Manuel Gayoso De Lemos, Governor General of this province, by his deed bearing date 28th of June, 1798, and it is the same tract of land described as aforementioned that I sell to the aforementioned Kennedy." It is further certified:

"The above is conformable with the original which remains in this commandant's office under my charge, to which I refer, and at the request of the purchaser I grant these presents before two witnesses of assistance for want of a regular notary in Mobile on the 27th of August, 1806. [Signed] Franco Maximo de Saint Maxent. [Signed] Franco Camile. John C. Lais.

"I certify the foregoing to contain a true and correct translation done by the undersigned at the request of R. H. Hallett, executor of the last will and testament of Joshua Kennedy, deceased. Mobile, June 29, 1839. Jos. E. Garr, Translator."

See, also, 189 Ala. 332, 333, 66 So. 624.

These instruments were translated by Garr (and recorded in Deed Book Y, pp. 548, 549, probate office) at the request of Hallett, executor of the will of Joshua Kennedy, deceased. Defendants only offered in evidence page 548 of that record—the translated deed from Baudin to Kennedy—and not the recited proceedings of its entry and grant through Spanish officials and by reason of laws of that sovereignty.

[4-6] There was no error in the ruling on the ground stated on former appeal, if adhered to. If the part of the certified copy offered in evidence was only a copy of a copy (Garrett v. Ricketts, 9 Ala. 529), or was the mere conclusion of an official of the legal effect of a document or record (Bonner v. Phillips, 77 Ala. 427), or was a copy of an original conveyance not authorized of record or made available as evidence, it was properly rejected on motion of plaintiff. The provisions of section 3382 of the Code of 1907 for certified copies of instruments recorded for 20 years did not make the same admissible in evidence as a record of a translation or copy of an original not in evidence and not of record and not shown to have been validly executed. Berow v. Brown, 208 Ala.

476, 94 So. 772. See Aiken's Digest, p. 88 et seq., for codification of territorial laws and statutes of conveyances and the record thereof, authorized by the law of conveyances of force at the time of the execution of alleged conveyance. The territorial sovereignty of Spain ceased in 1803, and the rule of the common law, as applied in Robertson v. Kennedy, 1 Stew. 245, was changed by the Ordinance of 1787 "for the government of the territory of the United States northwest of the River Ohio," which was made applicable to the instant territory by reason of the Articles of Cession and Agreement (2 U. S. Stat. at L. 69, § 1; 1 U. S. Stat. at L. 549, § 6) between the United States and the state of Georgia extending that ordinance (1787; Code 1923, vol. 1, p. 14) over the territory ceded by the latter to the former (Code 1923, vol. 1, p. 14 et seq.; Wiswall v. Ross, 4 Port. 321). It is provided by the Ordinance of 1787:

" * * * Real estates may be conveyed by lease and releases, or bargain and sale, signed, sealed, and delivered by the person (being of full age) in whom the estates may be, and attested by two witnesses; Provided, that such wills be duly proved, and such conveyances be acknowledged or the execution thereof duly proved, and be recorded within one year after proper magistrates, courts, and registers shall be appointed for that purpose. * * *"

In compliance with the Ordinance, the Act of 1803 (3) contains the following:

"Section 1. If any deed or conveyance of lands, tenements, or hereditaments, lying and being in this territory, heretofore made and executed, and not already acknowledged or proved, according to law, or hereafter to be made and executed, shall be acknowledged by the party or parties, who shall have executed it; or be proved by one or more of the subscribing witnesses to it, that such party or parties, signed, sealed, and delivered the same, as his, her, or their voluntary act and deed, before one of the judges of the superior court of this territory, or one of the justices of any county court of that county, in which the lands, tenements, or hereditaments are situated; and if a certificate of such acknowledgment or proofs shall be written upon, or under the said deed or conveyance, and be signed by the person before whom it was made, then every such deed or conveyance, so acknowledged or proved, and certified, shall be received in evidence in any court of this territory, as if the same were then and there produced and proved.

"Sec. 2. No conveyance of lands, tenements, or hereditaments, lying and being in this territory, which has been made and executed, and not already acknowledged or proved according to law, or which shall be made and executed, shall be recorded in any clerk's office in this territory, unless the execution of the same shall have first been acknowledged, or proved and certified, in the manner herein directed." Aiken's Dig. p. 88.

And it is provided by section 19 of that act (Aiken's Dig. p. 91) that deeds made and

executed after the act are "void and of no effect against a subsequent bona fide purchaser, or a mortgagee, for a valuable consideration, not having notice thereof, unless" they be "acknowledged, or proved and certified, and lodged within six calendar months * * * with the clerk of the county court, in the county in which" the lands are situated, "to be recorded by the said clerk," provided that same be valid and operative as between the parties. The acts requiring and enabling registration are December 7, 1811 (Toulmen's Dig. p. 245, c. 4) December 20, 1820 (page 250, c. 12), December 9, 1823 (Acts 1823, p. 23), January 9, 1826 (Acts 1825–26, p. 12) January 24, 1829 (Acts 1828–29, p. 12), January 10, 1831 (Acts 1830–31, p. 7), January 18, 1832, and extend the time of registration. The date of the registration in the "clerk's office" of the instant copy of deed is not given and it is not shown that the foregoing statute was complied with as to proof and record.

[7, 8] It is necessary that we consider whether the instrument offered was competent evidence as an authorized translation of an ancient document. The instrument offered by defendants as the source of title or that of Kennedy does not purport to be the original, or a copy thereof, or the translation of any particular book, record, or paper authorized by law to be kept. Its authenticity depends upon the unverified certificate of Jos. E. Garr, whose official identity is not disclosed or shown, and who, so far as this record discloses, was not a public official or public translator. We are only informed by the recital in his certificate that "the foregoing is a true and correct translation done at the request of R. H. Hallett," and the identity of the translator is not disclosed. There is no official seal affixed, nor evidence by certificate or otherwise of what the individual purports to translate, other than as the paper offered as evidence indicates on its face. The recitals of the certificate are hearsay, and the admission of the certificate in evidence would have violated elemental rules of evidence. There is no rule of the common law, nor of statute, rendering such a translation, without more, admissible in evidence. The mere fact that it was an ancient document did not render the Baudin-Kennedy deed admissible in evidence. It must be otherwise competent and admissible as evidence under the established rules. O'Neal v. T. C. I. & R. Co., 140 Ala. 378, 37 So. 275, 1 Ann. Cas. 319; Prince v. Prince, 188 Ala. 559, 66 So. 27; Messer-Johnson Realty Co. v. Security S. & L. Co., 208 Ala. 541, 94 So. 734.

[9, 10] The provisions of the ancient statutes for making translations are contained in a codification in Aiken's Digest, p. 354. They are to the effect (1803 [3], § 23, Spanish Records, how preserved, etc.) that, no legal provision having been made "for the safe-keeping, preserving and certifying the records and papers of the office of clerks and recorders, which were kept during the administration of the Spanish government: Be it therefore enacted that the Governor shall immediately, after the passing of this act, appoint and commission some person properly qualified to keep, translate, and preserve the same; and the said officer so appointed is hereby authorized to give copies of all and singular the said papers and records, whenever thereunto required, and certify the same under his hand and official seal * * *"; that the duty of the person so appointed "shall be to translate and to transcribe all the British, French, and Spanish records, within the limits of this state, and to record the same in a well-bound book, to which shall be annexed, an alphabetical index; and to place one copy of the same in the office of the clerk of the county court of Mobile, one copy in the land office at St. Stephens, and one copy in the office of the secretary of state * * *"; and "the records thus transcribed and translated shall be received as evidence in any court of justice within this state." The translator in office is thus made in a sense a public official of the state of Alabama under the act of 1833. The courts take judicial knowledge of such official action by the Governor in the appointment of a person as translator, and of his qualification in that office as translator of "British, French, and Spanish records within the limits of this state." Judicial knowledge stops short of a knowledge of his specific acts of translation, or that said individual, Jos. E. Garr, was the official translator (Hodge v. Joy, 207 Ala. 198, 92 So. 171) at the date he made the translation on request of Hallett as Kennedy's executor. The absence of his informing certificate that he was an official translator as to the instant paper rather than an individual translator understanding the language in which the original was written is significant. The act of translation was not under his official hand and seal. We cannot take judicial knowledge of a fact that this court does not in fact judicially know.

Adverting to the old statute, the records to be translated and made evidence in the courts named were of two classes designated by the acts; those kept during the administration of the Spanish government up to and including the year 1803, and those from British, French, and Spanish documents within the limits of this state.

The petition of Louis Baudin for the grant or entry of the land, dated April 27, 1798, and the order of the Governor General of the province, dated June 28, 1798, purport to be of the class of records kept during the administration of the Spanish government, and were within section 1 of the act of 1833 and

to be certified under official seal. The certificate of Franco Maximo de Saint Maxent (189 Ala. 333, 66 So. 624), August 27, 1806, and the purported deed in Spanish from Louis Baudin to Joshua Kennedy, dated August 26, 1806, are of the latter class of documents, and to be authenticated by such translation and recordation as provided in section 2 of the Act of 1833, Aiken's Dig. p. 354. This being done, section 5 of the act has operation, and records thus transcribed and translated "shall be received as evidence in any court of justice within this state." The evidence before us is silent as to whether the translation was by the state official and was so translated and transcribed in a well-bound book that was filed in the office of the clerk of the county court of Mobile, in the land office at St. Stephens, and in the office of the secretary of state.

[11] If we take judicial knowledge of the public records in the office of the secretary of state, they will disclose two well-bound books, viz. the Translations of Spanish Grants, extending to the date of February 17, 1803, and the Translated Records of British, French, and Spanish (land) Claims. That is to say, Mr. Peter A. Brannon, curator of the state department of archives and history, has, on request of the writer, refreshed judicial knowledge from the archives of the office of the secretary of state and public documents therein filed pursuant to the act of 1833, consisting of folio volume labeled "Spanish Grants," and translations covering various grants and land transactions during the period 1763–1803; and another volume labeled "Translated Records of British, French and Spanish Claims"; being a folio volume made by Joseph E. Caro, translator, under Act of January 9, 1833, the commission of the said Caro being dated March 3, 1840. The latter volume, containing 457 pages embraces the translations and transcripts of documents from November 12, 1715, to January 18, 1812, and entered in accordance with the certificate given under his hand and seal on October 14, 1840. There is no such concession or grant of land of June 28, 1780, or of 1798, to Baudin, as recited (or stated therein by the translator as "I say '98"), as contained in the translation dated June 29, 1839, of the alleged deed of Baudin to Kennedy, of date August 27, 1806, sought to be offered in evidence by the defendants. The translations show a petition by Louis Baudin, of date October 4, 1792, to the Governor General for a grant of 15 arpens of land about 7 leagues distant from Mobile and on the east side of Mobile Bay, bounded on the north by uninhabited land, and on the south by The Rocks (a las pietras); also the order of the commandant of the regiment of Louisiana dated October 22, 1792; and the order of the commandant of the Port of Mobile for the grant to Baudin

of 15 arpens of land front by the ordinary depth of 40 arpens at the place mentioned. This description may have embraced this land—being of 700 or 800 acres. 205 Ala. 44, 88 So. 135. The last recital is, however, beside the question for decision. There being no official translations of Spanish documents made in 1839, the date of the alleged translation or copy in English of the deed in Spanish from Baudin to Kennedy, and the Spanish memorials or concessions recited in the deed not being contained in the official translations made and filed pursuant to law in the office of the secretary of state, is confirmatory of the conclusion we have announced that the circuit court had offered as evidence of deed from Baudin to Kennedy a copy of an unofficial translation or copy of a document in Spanish—not self-proving.

[12] It should be explained that the foregoing reference to the two volumes of translations is not by way of evidence, not offered at the trial, but as refreshing the judicial knowledge of this court of ancient public acts and concessions, and as to when, and by whom, such official translations of conveyances under the Spanish and French grants of land were made and authorized as evidence in the courts of this state. It follows that the trial court was not sufficiently informed that the original document, from which the translation or recorded copy was made, was properly executed and duly admitted to record (Aiken's Dig.) pp. 354, 355, § 5); that the copy offered as evidence was not shown to be self-proving when offered as muniment of title, or was an ancient conveyance within the statute (section 3382, Code of 1907); or that it was offered by way of an interpretation of an original in evidence as provided by statute (section 4010, Code of 1907). The circuit court was not in error in rejecting the document in question.

[13, 14] In view of the foregoing, it is unnecessary to speak further of the exclusion of the Baudin deed to Kennedy. However, appellants argue that the exclusion of the Baudin conveyance to Kennedy, and the admission of the deed from Baudin et al., to Greig and Eslava, cannot be reconciled with the holding in McMillan v. Aiken, 205 Ala. 38, 88 So. 135. The descriptions of the respective conveyances are different. The parol evidence shows that the parties thereto took possession under their deeds. If the description of land in a conveyance presents a latent ambiguity, to the extent only that it may apply to either of two pieces, the intention of the parties to the conveyance has been ascertained under the rule by looking to their acts and their competent and material declarations in possession, and deeds of doubtful meaning have been resolved in favor of possession. Reynolds v. Lawrence, 147 Ala. 216, 40 So. 576, 119 Am. St. Rep. 78; Moody v. A. G. S. R. R. Co., 124 Ala. 195,

26 So. 952; Webb v. Elyton Land Co., 105 Ala. 471, 18 So. 178; Cobbs v. U. N. S. Co., 202 Ala. 333, 80 So. 415; Chambers v. Ringstaff, 69 Ala. 140; Mobile Co. v. Linch, 198 Ala. 57, 73 So. 423; Russell v. Garrett, 208 Ala. 92, 93 So. 711; 1 Cyc. 1094, and 1086, note 84; 10 R. C. L. pp. 1067, 1068, §§ 262, 264. In the present case Baudin's claim is shown to be based on habitation and cultivation of the island, and this possession came on down to 1913; his privies in estate, his descendants, theretofore confining themselves to the land north of Bayou Jessamine. Appellee and his predecessors in title, to and including Fisher, took possession of said land being west of Bottle bayou, south of Bayou Jessamine, and east of Tensaw river. These acts of ownership and possession distinguish and give a definite meaning to the respective deeds before us. The consequent difference in the two conveyances is apparent on inspection. That from Baudin to Kennedy describes the tract of land as containing 20 arpens front with ordinary depth, bounded fronting Bayou Jessamine and on the west by Bottle bayou and Tensaw river; that from Baudin, Nicholas et al. to plaintiff's predecessors in title describes the land as bounded on the north by Bayou Jessamine and extending toward the mouth 20 arpens, on the west by Bottle bayou, on the south by said Bayou Jessamine, and on the east by the Tensaw river, and "which tract of land was confirmed to parties of the first part by the second section of the act of Congress of 3d of March, 1819, agreeable to the report of Commissioners John H. Hazzard and John Henry Owen." When these descriptions are applied to the map in evidence, it is noted that the Baudin-Aiken lands are north of the bayou, and are bounded on the west by the River Tensaw and Bottle bayou, and that the Girard lands are south of the bayou, and did not touch Tensaw river on the west (but Bottle bayou), and were only bounded by Tensaw river on the east. The former would not describe the instant lands, for Tensaw river does not touch them on the west. It definitely describes land north of Bayou Jessamine. In appellee's deed, if it contained a patent ambiguity in bounding the land both north and south by Bayou Jessamine, when read in the light of the Hazzard and Owen report of land on Tensaw river and the evidence and pertinent surrounding monuments, what would (not so aided) be a patent ambiguity is rendered a latent ambiguity. The appellee's deed is admissible by same evidence under the rule that a grant will not fail for ambiguity of description, if there is a sufficient or particular description which, under the relevant and surrounding facts, will sufficiently identify the land intended to be conveyed. This is the principle on which the deed of 1845 from the Baudin heirs to Greig and Eslava

was upheld. 205 Ala. 38, 41, 88 So. 135. This principle has been declared in the decisions in this jurisdiction. Clements v. Pearce, 63 Ala. 284; Whitehead v. Lane, 72 Ala. 39; Carter v. Chevalier, 108 Ala. 563, 19 So. 798; 13 Cyc. 630–1.

[15] The deed of 1806 being excluded, it followed that there was no error in excluding the mesne conveyances thereunder, as that of defendants' brother, sister, will of Kennedy, etc. They were offered as muniments of title, and not as color of title. The defendants did not limit the offer of said deeds in evidence. Lester v. Jacobs, 212 Ala. 614, 103 So. 682; Hanners v. State, 147 Ala. 27, 41 So. 973.

The claim for damages and evidence of appellee is confined to timber cut south of the Bayou Jessamine. Such was the effect of plaintiff's testimony—the evidence of Joe Smith. No evidence was offered or claim made by plaintiff for timber cut north of said water course. The fact that defendants tendered evidence of an "old field at the right side of the lake" or cattle landing on the Baudin tract on northern boundary and opposite Tensaw river on the island, or of the cutting of timber by defendants or their agents in the Spring of 1913 north and south of said bayou (see testimony of John Aiken), did not change the issue as to authorize the introduction of the ancient document of 1806 as a muniment of title, and it is held incompetent evidence for the reasons adverted to in the several opinions of this court. The deed to Kennedy was not offered as color of title on which to base a claim of adverse possession, but as a muniment of title of defendants' alleged predecessors or privies in estate.

[16] The documents offered were incompetent evidence for any purpose. Aiken's Dig. p. 354, §§ 1, 2; Clements v. Taylor, 65 Ala. 363. And no error was committed in excluding the documentary evidence indicated, under the alleged deed to Joshua Kennedy, not offered as color of title. It is declared that, when one relies upon a conveyance from another as a muniment of title, to avail anything there must be evidence that at the time of the conveyance said grantor had the legal title to the lands sought to be conveyed. Baucum v. George, 65 Ala. 259, 267; McMillan v. Aiken, 189 Ala. 330, 337, 66 So. 624; Id., 205 Ala. 35, 38, 88 So. 135.

[17] The declarations of John Aiken (to Wm. Bryant and others), one of the owners and in possession of the island, were competent to show the southern line or boundary of the defendants' lands was Bayou Jessamine. Smith v. Bachus, 195 Ala. 8, 70 So. 261; Snodgrass v. Snodgrass, 212 Ala. 74, 101 So. 837.

The confirmation of the survey for the legal representatives of Louis Baudin under the act of Congress of March 3, 1827, in evi-

dence, shows that Baudin entered a claim and cultivated land on the Tensaw river under grant from Manuel De Lemos of 280 acres. By reference to the exhibits in this case (and in 189 Ala. 332, 66 So. 624) we note that the survey was not then made; that later the legal representatives of said Baudin acquired additional land, and by the survey that embracing the land theretofore claimed by them and other lands south of Bayou Jessamine, aggregating 1,242.50 acres, and embracing a part of that made the subject of ·inquiry in this suit. The survey is dated January 2, 1838. There was evidence of ancient cultivation of the Baudin claim north, of Bayou Jessamine and about Jug Lake on the island, and not south of Bayou Jessamine.

[18] The evidence further shows that the appellants have been continually conducting timber operations on said island for years; that the cultivated field adverted to in defendants' evidence embraced a small strip of land (Aikin Island) on the east side of. this conflict and not south of the bayou; that no timber operations were conducted south of Jessamine bayou by appellants or by one under whom they claim until the spring of 1913, when appellants, during high water, floated off the timber now sued for. The contrary tendency is that, when Robinson & McMillan purchased the land in 1880 (south of Bayou Jessamine), they immediately put their agents in charge as to the conflict and other lands, deadened timber, cut timber roads and ditches, cut and floated out timber. As adverted to on former appeal, this is the only use to which the land in question can be put by reason of its physical condition, being swamp and overflowed land, as stated in 205 Ala. 35, 88 So. 135. These positive acts of ownership and possession which the nature of the land permitted by appellee and those in privity of title with him, and shown to have continued yearly since 1880, without interruption or interference by any one, and the further fact that the lands have been regularly assessed and taxes paid by the appellee, authorize the jury to find these facts had ripened into adverse possession. ·

According to appellee's testimony (Murphy McMillan) appellants never cut timber on any ·part of the conflict before 1913. That witness said:

"I have known that part of the conflict above Bayou Jessamine about the same length of time I have known the other. *The Aikens, up to that time (1913) had never cut any timber on the confliction.* They did cut *up to the confliction line* but didn't cut on the *confliction on Aiken Island.*" (Italics supplied.)

This is a positive statement that the Aikens never cut on the confliction above or below Bayou Jessamine but the one time in 1913. The suit, be it remembered, is for the timber then cut below said bayou on section 44.

Defendants' counsel concede that·for the purpose of the appeal appellee's evidence presented the jury question of whether appellee and those under whom he claimed had acquired title by adverse possession to that part of section 44 which lies south of Bayou Jessamine.

We should inquire, in view of affirmative instruction requested and refused, whether this record contains a different phase of evidence as to adverse possession than that presented on former appeals.

In Aiken v. McMillan, 201·Ala. 280, 78 So. 56, this court said of appellants' possession as being such as would ripen into title:

"* * * The proof shows without conflict that the cutting alleged in the complaint was done on the land south of the bayou, and in like manner it shows that up to the time of the trespass alleged appellants have never been in the actual possession of the confliction below the bayou. For many years appellants have been in possession of their grant above the bayou, and at times have cut trees on that part of the confliction on that side. On the other hand, appellee by sundry, though not extensive, cuttings from year to year, by cutting a ditch, by surveys, warning off trespassers, and paying taxes, has during the period of the severance demonstrated acts of ownership which would have carried the question of .his title acquired by adverse possession during this period to the jury, had he claimed also the land as well as the trees. * * *

"As to the period antedating the severance: Appellee was a member of the firm of Robinson & McMillan, which took a conveyance of the land in 1880. The title so acquired was in 1884 conveyed to one Pollock in trust for the creditors of Robinson & McMillan. In 1891 Pollock, the debts of Robinson & McMillan having been paid, conveyed to Stockton Lumber Company, which in 1909 executed an instrument the effect. of which, as appellee claims, was to vest in him the timber rights in the confliction which the lumber company has reserved to itself when making a deed of the land in 1898. In 1909 the lumber company conveyed its rights to appellee. It is thus seen that the period prior to the severance of the title between the land and the trees during which appellee claims that he and his predecessors in title held the land and the trees adversely to all the world, a period of 18 years, was bisected by a term of 7 years during which Pollock held as a trustee. * * *"

This case in the trial dealt with above had proceeded on the theory that appellants held the land by record title and adverse possession, and on the phase of evidence that the period following the severance by conveyance of the land (after the fifteen-year term for cutting the timber) to Crosby in 1898 was included. As to this it was there said:

"* * * Whatever may be said of the other parts of the period before the severance, the evidence covering the period last mentioned

hardly sufficed to carry to the jury the question of that period as a constituent part of the period of 10 years necessary to make out a title by adverse possession. It results that the question of adverse possession should have been withdrawn from the jury as requested by appellants." 201 Ala. 282, 78 So. 56.

The present appeal presents different evidence on the point. It is shown that appellee's possession before and since is continuous; that the Pollock deed to appellee, dated in 1887, then offered as a muniment of title, at the last trial was offered as color of title.

[19] The question of adverse possession was adverted to in 201 Ala. 280, 78 So. 56, and 205 Ala. 35, 88 So. 135. The present record differs from the former (201 Ala. 280, 78 So. 56) in that it shows the Pollock deed of 1887 to Stockton Lumber Company sufficient as color of title and to put in operation the statute of adverse possession for the period 1887 to the date of deed to Crosby in 1898. There was also shown on the last trial such a continuity of timber operations and other acts of adverse possession through and during the Pollock period under privity of title, and evidence connecting the Pollock period with the antecedent and subsequent holdings and timbering of the lands, as to make a jury question as to the whole time during which the 10-year statute of adverse possession may run. Hence there was no error in ruling on charges as to adverse possession. Charges 2 and B, given under the evidence, refer to and define actual possession as related to its sufficiency to ripen into title as against a wrongful interference therewith. The evidence shows the land in question was such as to admit of an actual possession in cutting, removing timber, and preparing to timber the land as to amount to adverse possession under the rule. Ala. Co. v. Matthews, 168 Ala. 200, 53 So. 174; McMillan v. Aiken, 205 Ala. 35, 40, 88 So. 135; Hooper v. Bankhead, 171 Ala. 626, 54 So. 549; Powers v. Hatter, 152 Ala. 636, 44 So. 859; Childress Calloway, 16 Ala. 128, 1 A. L. R. 1337. The question of fact was left for determination by the jury.

The plaintiff, B. F. McMillan, as a witness in his own behalf, testified that he has lived within one mile or two of the land all his life (he being 82 years of age); was a member of the firm of Robinson & McMillan, which took possession of the same and commenced their timbering operations thereon in 1880, and who, for and as agent of Pollock, timbered the land during the latter's trusteeship; paid the debts of the firm of Robinson & McMillan; was a stockholder in and managed the land during the period that the Stockton Lumber Company held it. He said:

"There was not any stoppage in our timber operations. Robinson & McMillan conducted these operations after that deed was made for themselves by Jacob Pollock's permission. * * * The debts of Robinson & McMillan were paid a short time after the trust deed was made. They were paid at the time I got my first deed from Pollock. When we got the deed to Robinson & McMillan we assessed the land for taxation and paid the taxes. After Pollock got the trust deed Robinson & McMillan assessed it and paid the taxes. After Stockton Lumber Company got their deed they assessed it and paid the taxes. * * * I don't think there was any stoppage of timber operations during the period that Robinson & McMillan had it, that Pollock had it and that Stockton Lumber Company had it. It was all practically under the same management. After the Stockton Lumber Company gave me a deed, I got the timber without any stoppage of my former operations."

See, also, last appeal, 205 Ala. 35, 88 So. 135, on that point as to adverse possession of such lands.

In the report of the case in 182 Ala. 303, 62 So. 519, the appellants are shown to have submitted as the source of title the Baudin transfer to Kennedy, or translation thereof, of 1806. The court held that said conveyance did not include or describe the land in question. In a later trial the same claim of title was offered in evidence and rejected under the foregoing ruling (189 Ala. 330, 66 So. 624). Thereupon appellants offered on the third trial the deed from Louis Baudin (1849) and that from Louis C. Baudin (1870), and the case was reversed on the ruling of the trial court as to adverse possession by reason of the severance to which we have adverted. At that trial appellants' informal deed from Pollock (1887) as color of title was not so offered; only Pollock's deed of 1891. The court again sustained as proper the exclusion of the Baudin deed of 1806, saying the same question had been theretofore ruled against appellants on the ground that the instrument, offered as a muniment of title, did not purport to convey the land from which the timber was cut. 201 Ala. 280, 281 (1), 78 So. 56.

On the fourth appeal the Aikens relied upon the Baudin deeds of the respective dates of 1849 and 1870, and disregarded the instrument under the conveyance of 1806. Appellants adduced evidence by Modiste Voltaire to the effect that her grandfather, the purported grantor of the Aikens' deed, had died before the date of that conveyance. The trial court assumed that the deeds of 1849 and 1870 were genuine, and, under former rulings as to the incomplete adverse possession to the date of severance, at Aiken's request gave the general affirmative charge. This was reversed in 205 Ala. 35, 88 So. 135, it being held that a jury question was presented.

The subsequent trial supporting this appeal resulted in a verdict of the jury for McMillan. Defendants' deeds dated 1849 and

1870 were not offered. Instead, the defendants' claim of title was rested on a part of the translation or copy of a copy of the instrument of date 1806, as recorded in the probate office of Mobile county. This instrument in its completed form, as so recorded and twice excluded by this court, was properly excluded by the circuit court, for reasons heretofore indicated, and in former opinions. 189 Ala. 330, 66 So. 624; Id., 201 Ala. 281, 78 So. 56.

Turning again to the rulings on evidence, there was no error in excluding, on plaintiff's motion, the several conveyances, as was done, for it was not shown that the grantors or predecessors had title to the land. McMillan v. Aiken, 189 Ala. 330, 337, 66 So. 624; Id., 205 Ala. 35, 88 So. 135; Baucum v. George, 65 Ala. 259, 267.

Adverting to the admission in evidence of the deed from the Baudin heirs—Nicholas et al.—to Greig and Eslava, it should be further said that it was properly admitted in evidence, in view of the testimony of Frank Girard connecting those grantees with plaintiff's title. The defendants objected to the introduction of this conveyance on the grounds "last above specified," and, further, particularly to that portion of the deed which recites that the parties therein named are all the heirs and legal representatives of Louis Baudin, deceased, as a legal conclusion. The objection "last above specified" (as shown by this record) was with reference to the deed from Edward, Olivia, and Augustine Fisher to Robinson & McMillan, and the grounds were "that it does not appear that those grantors had any title to the land involved in the suit, but it appears from the admission of the American state papers and the patent that Louis Baudin and not Francis Girard acquired the title to the land involved in this suit."

Recitals in such ancient documents were held evidence of the truth of such recitals, and the document was relevant. McMillan v. Aiken, 205 Ala. 35, 38, 88 So. 135; Fulkerson v. Holmes, 117 U. S. 389, 6 S. Ct. 780, 29 L. Ed. 915.

[20, 21] If there is ambiguity in the description employed in a conveyance within the rule of parol evidence thereof, the acts of the parties and their interpretations of such ambiguity will be taken into consideration by the jury. And in this jurisdiction it is held that a deed or writing purporting to convey the land in controversy will give color of title to a possession taken under it, even though such writing be void as a legal conveyance. Riggs v. Fuller, 54 Ala. 141; Stovall v. Fowler, 72 Ala. 77; Cooper v. Watson, 73 Ala. 252; Black v. Coal Co., 93 Ala. 109, 9 So. 537; Bank v. Baker, etc., Co., 108 Ala. 635, 19 So. 47; Perry v. Lawson, 112 Ala. 480, 20 So. 611. When possession is taken and held under an instrument, the meaning or construction of which is ambiguous and such as may be explained, and the parties intend it as a deed to lands described, unequivocal and continuous acts of ownership and of adverse possession, without objection, for the time of the statute, ripen into adverse possession under the rule obtaining. Westmoreland's Case, 92 Ga. 233, 17 S. E. 1033; Schlawig v. Purslow, 59 F. 848, 8 C. C. A. 315; 1 Cyc. p. 1094, note.

[22] The respective rulings of the court concerning the tract book as to section 44 are without prejudicial error. The general objection was to its introduction before there was evidence of a conflict as to grants or patents. The objection was that it "constituted irrelevant, incompetent, immaterial testimony," but not on the ground that it was secondary evidence. When offered it was competent evidence. Code 1907, § 3979; Perryman v. Wright, 189 Ala. 351, 66 So. 648. The motion to exclude after other evidence was introduced was on the ground stated below. The motion was not to exclude the patent as a muniment of title, but on the ground that it had theretofore appeared by evidence that this land, "covered by this tract book entry, was in fact confirmed to and patented to the legal representatives of Louis Baudin," and that Francis Girard, who is named as claimant, "therefore" has "no title to the land." The patent in question was competent under the evidence as tending to show color of title under which the party claimed in good faith, and there was no error in rulings on argument thereon to the jury. Goodson v. Brothers, Adm'r, 111 Ala. 596, 20 So. 443; Carter v. Chevalier, 108 Ala. 563, 19 So. 798; Henry v. Brown, 143 Ala. 446, 39 So. 325; Heath v. Lewis, 200 Ala. 509, 76 So. 451. The ruling was without error, as we shall later show.

[23] There was no error in permitting McMillan and Aiken to testify as they did of values of the timber. Burton & Sons v. May, 212 Ala. 435, 103 So. 46; Cato v. Williamson, 209 Ala. 477, 96 So. 321; Zimmern v. Southern Ry. Co., 207 Ala. 169, 92 So. 437; N. B. & Sup. Co. v. Ala. Co., 211 Ala. 192, 100 So. 132; Southern Ry. Co. v. N. F. Exch., 210 Ala. 519, 98 So. 382. The testimony of Bryant as to plaintiff's possession, or who had been in possession, of the land as he knew it, was pursuant to announcement in 205 Ala. 35, 39, 88 So. 135. The evidence of Smith as to cutting the timber on the Girard tract was material, relevant, and competent. Crosby and McMillan (who knew the land or tract thereof) located the locus in quo of the cutting of timber on said land the subject of inquiry.

[24, 25] The witness McMillan, shown to be of proper experience, or an expert in timbering, or to know the fact, was properly permitted to tell the result of cutting gum timber without deadening it, according to

the methods adopted as to such timber operations. The reason (for the purpose of floating it) for this method of cutting was also properly explained by the witness to the court and jury. McMillan v. Aiken, 205 Ala. 35, 39, 88 So. 135. There was no error in showing by McMillan that Smith had, as a matter of fact, counted the stumps showing trees taken therefrom and trees cut and not removed. McMillan testified that he was with Smith during the entire count, and located the locus of the cut area on the land made the subject of inquiry.

[26] Not being in possession, and in the absence of muniments of title, appellants were not permitted to testify that their immediate ancestor claimed the Baudin tract or part of land from whence timber sued for had been cut. The rule is stated in Smith v. Bachus, 195 Ala. 8, 70 So. 261. As applied to defendants, the statement would have been a conclusion not permitted by the rules obtaining in the premises. It was not competent as rebuttal to plaintiff's evidence that he had not heard of any adverse claim on the part of the others to the land—the knowledge of Mrs. Aiken's (the mother's) claim to the lands south of Bayou Jessamine was not brought home to appellee's witness so testifying.

[27] We will not reverse the case because McMillan was permitted to answer affirmatively the question:

"Now during the time these timber operations he asked you about and you stated you cut a little every year on this land, did you also cut on your other lands?"

There was no motion to exclude, and the evidence was not prejudicial. The witness had given his experience in the business of milling, and was saying he cut on the land in question and his other lands in due course of the conduct of his said business.

[28] Having permitted in evidence, over defendants' objection, the tract book entry by Francis Girard of section 44, township 1 north, range E, the survey of that tract, its examination and approval March 22, 1844, by the surveyor general of the public lands, etc., before the introduction of the confirmation in the legal representatives of Louis Baudin and the patent to them, and the trial court having overruled the motion to exclude this evidence, counsel for plaintiff was permitted to argue from the tract book, stating that it was evidence of ownership of title in Francis Girard and in the plaintiff claiming under the title of Francis Girard. As we have heretofore indicated, when the tract book was admitted in evidence, it was competent as against the general objection made thereto and for all purposes so far as theretofore disclosed in the trial. There was a tendency of evidence showing title from Baudin's heirs to Greig and Eslava and by mesne conveyances to the plaintiff. The tract book was a link in the title of appellee from the Girard source by virtue of the statute. Code 1907, §§ 3979, 3980, 3982; Perryman v. Wright, 189 Ala. 351, 66 So. 648; Stewart Bros. v. Ransom, 204 Ala. 589, 87 So. 89.

[29] The issue of the Baudin patent did not effect or negative the bona fides of the Girard claim as color of title that was supported by other evidence connecting the possession of plaintiff's predecessors in title under and to the tract book entries. The motion to exclude the Girard tract book entry, made after the introduction of the Baudin patents (as noted), was not limited by counsel to its exclusion as a muniment of title. The failure of defendants to connect their claim of title with the Baudin source illustrates the lack of necessity for the court to pass upon the relative merits of the two conflicting grants. The plaintiff contended for his title for adverse possession under the Baudin and Girard records, respectively, as muniment of title, or as color of title. The argument was without prejudice to appellants.

[30, 31] Appellants have no cause for complaint on account of the court's rulings as to the legal effect of the confirmation of the Girard claim. The tract book, the government map, and surveys reciting confirmation were in evidence. No presumption arises that the patent to Girard, if inferior to the Baudin patent, did not issue. The evidence of the transfer by the Baudin heirs to Greig and Eslava is undisputed. Under the rulings of this court the defendants did not connect themselves with the part of the Baudin claim south of Bayou Jessamine. The charges asked by defendants on the point are not limited to the superiority of the Baudin patent, but ask the court to charge as a fact that there was no confirmation or patent issued to the Girard claim, and that the patent vested title in the legal representatives of Louis Baudin. Those representatives conveyed their interests. The only effect of the patent was to divest the government's title, and, in so far as the defendants are concerned, the ruling is harmless. The only possible way in which the superior validity of the respective claims could be harmful would be in a contest between Baudin and Girard of their heirs and assignees. Since appellants do not connect as to this land south of the Bayou with the Baudin title, the ruling is harmless to them. Moreover, the instruction requested required the court to charge that a certain fact was proved, which is improper. L. & N. R. R. Co. v. Young, 168 Ala. 551, 53 So. 213.

[32-35] There was no reversible error in refusing the several general affirmative instructions requested as to the several counts of the complaint. To be more specific, there was no error in refusing the general charge

on the theory that it was not shown that the timber cut and removed from the land in 1913 by defendants was there when the deed to Crosby was made in 1898. The instrument was not a sale of merchantable timber then standing on the land, but a sale of the land, reserving and excepting for the term of 15 years all and every size and sort of wood and timber whatever, standing, sunk, or otherwise, all of which grantors shall own and remove at any time or in any way for 15 years. Appellee's title to all of the timber at all times until the expiration of 15 years from the date of the deed was recognized and acquiesced in by Crosby. The evidence shows that appellee and Crosby fully recognized appellee's title to the timber, that he had possession of that timber, and, for the purpose of the timber operations on the land, until the expiration of 15 years. Under the language of the instrument no timber at all was sold until after the expiration of 15 years. That language, coupled with the conduct and expressed intent of the parties, shows that all timber on the land at any time within the term belonged to appellee. The language of the reservation speaks in futuro. In such case the intent will be given effect, if it be not contrary to law. Lowery v. May (Ala. Sup.) 104 So. 5.[1] See, also, Jacob's v. Roach, 161 Ala. 201, 49 So. 576. That is to say, the two defendants were not entitled to the affirmative charges requested under authority of Miller-Brent Lbr. Co. v. Dillard, 201 Ala. 18, 75 So. 308; Wright v. Bentley Lbr. Co., 186 Ala. 616, 65 So. 353. The reservation was not of all merchantable timber, but in terms, as we have indicated, of all timber. It will be noted that at the time of the Crosby deed there was growing on the land gum timber, and that it was so recited and reserved in the conveyance, and defendants' evidence, by John Aiken, was that the timber was "virgin timber"—meaning that it had never been cut. It was therefore a question for the jury to say whether the timber cut by defendants was upon the land when the instrument of 1898 was made with Crosby. Every inference favorable to plaintiff under any tendency of the evidence must be taken as true in the giving of affirmative instructions. McMillan v. Aiken, 205 Ala. 35, 40, 88 So. 135; McGowin Lbr. Co. v. McDonald Lbr. Co., 186 Ala. 580, 64 So. 787.

[36, 37] No reversible error was committed in refusing the general charge under the first count, requested on the theory that plaintiff had sold the land to Crosby, and that, Crosby, being the owner of the land, subject to plaintiff's title to the timber, plaintiff could not recover damages for injury declared for. The evidence shows that plaintiff's title to the timber and the rightfulness of his possession of the land for his timber operations thereon

were recognized and acquiesced in by Crosby, the owner of the fee. However this may be, the trial court, in the oral charge given the jury, instructed that they not take into consideration any damage to the land as such, and gave written charge A, to the effect that, if the verdict be for plaintiff, the jury should not include any damages to the land, and limited the damage to the timber unlawfully cut and removed therefrom. The owner of trees is the owner of land in an action for statutory penalty, trespass on land, and for cutting and removing timber. Code 1907, § 6036. It follows that the trial court will not be put in error for refusing the general charge predicated upon the variance or immaterial omission in evidence, unless it appears that the point upon which it is asked was brought to the attention of the trial court. The record does not disclose that the court·was so informed when the general affirmative charge was requested as to the count. Circuit court rules 34, 35, 175 Ala. xxi, xxii.

There was no reversible error in refusing defendants' charge No. 22. Jones v. Myrick Co., 191 Ala. 448, 67 So. 672. If error there was, it was rendered innocuous by the foregoing and other instructions to the jury limiting the damage to that for the timber cut and removed.

[38-40] It is further insisted for Norma Aiken that she was entitled to the general charge on counts 1, 2, and 3 of the complaint, on the ground that she did not go upon the land in question or cut or remove the timber therefrom. There is a conflict in the respective tendencies of evidence, and therefore the jury were the judges of the facts under such conflicting tendencies. McMillan v. Aiken, 205 Ala. 35, 40, 88 So. 135. If Miss Aiken was not connected with the trespass, she should not be penalized in damages for the wrongful act of her brother, John Aiken, and those laboring under his direction, causing the damages sued for. Scarborough v. Ala. Midland Ry. Co., 94 Ala. 499, 10 So. 316; Ala. Midland Ry. Co. v. Martin, 100 Ala. 511, 14 So. 401; Brewer v. Kaul Lbr. Co., 193 Ala. 269, 69 So. 84. There is evidence from which the jury might infer that Norma and John Aiken claimed the Baudin lands, embracing the conflict; that they maintained the right to cut over that area; that the cutting was done or directed by John Aiken; that Norma received her part of ,the money for the timber in question, and paid for the cutting; that all the cutting that was done was through and under the joint authority of said alleged owners. Notwithstanding the contrary evidence for defendants that Norma Aiken did not know the locus in quo of the cutting, and was not informed of the trespass so as to have ratified the same, as an unauthorized act, yet there was a conflict in the respective tendencies of evidence. The

[1] Ante, p. 66.

question of liability vel non of Norma Aiken was properly submitted to the jury.

[41] The use of the expression "may ripen into title" in given charge 3 was to leave the question of fact open for the jury as to whether the required possession extended to the statutory period. The charge, when taken with the evidence and other instructions, was merely defining what hostility of an actual possession of land if persisted in for a sufficient time may ripen into title. If it be thought the charge was misleading, explanatory instructions might have been requested. There was no reversible. error in giving this charge. Goodson v. Brothers, Adm'r, 111 Ala. 589, 20 So. 443.

[42] Given charge 4 was in accord with the former opinions in this case (205 Ala. 35, 88 So. 135), and left the finding of fact for the jury.

We have read the court's oral charge in extenso, considered it with the given instructions, and find no reversible error. Defendants' insistence of error in the general statement in the oral charge is that it is alleged it excluded to defendants the defense of title in third persons. When the charge as a whole is considered, and given charges 27, 28, and 29, stating the necessity of plaintiff's ownership in trees, timber, and land, and given charges 42 and 49, leaving to the jury the ascertainment of the facts and truth of recitals of Baudin's deed to Greig, there was no error.

When the oral charge and given charges are considered, there was no error in the instruction:

" * * * Another question for you to determine is, Was the plaintiff the owner of the trees at the time he filed this suit? If, after having considered all of the evidence, you are reasonably satisfied that the plaintiff was the owner of the trees or timber, then as a matter of fact the plaintiff would be entitled to recover."

Given charges 27 and 28 required that it is shown plaintiff was the owner of the trees, etc., alleged to have been converted; and given charges 33 and 34 that at the time of the severance of the timber the plaintiff was in actual or constructive possession of the standing timber or trees. Creagh v. Bass, 190 Ala. 135, 67 So. 288.

Defendants had introduced the deed from Crosby to the Stockton Lumber Company without limitation of the purpose for which it was offered. The court in the oral charge above quoted, taken in connection with the context therein, assumes that that deed vested title in Crosby and by its reservations title to the timber in plaintiff. The jury were not misled as to this when given charges 27, 28, 36, 42, and 49 are considered. We find no reversible error as to the oral charge when considered as a whole and with the given charges.

[43] Assignment of error is predicated on the refusal of charge 30, to the effect that, if timber belongs to plaintiff, and the jury believes its value was greater after being cut than while standing, plaintiff could only recover nominal damages for defendants' wrongful taking of the timber. The evidence shows that the timber had a substantial value both while standing and after being cut; that defendants cut, removed, and appropriated it or its proceeds to their own use. Plaintiff's recovery therefore would not be limited to nominal damages, and the charge was properly refused. The rule stated in Howton v. Mathias, 197 Ala. 463, 73 So. 92, does not hold to the contrary. Count 2 was for wrongful taking of logs.

[44] There was no error in refusing charges for defendants invoking judgment as to the superiority of the Baudin patent over the grant to Girard. The evidence showing that the legal representatives of Baudin had parted with such interest as they had to the lands, and that plaintiff had acquired that interest, the only effect of the patent was to show that the sovereign had no interest therein, and that there was a field for the application of the rules of law as to real property between private interests under the facts of the case as found by the jury. Charges to the effect that a stated controverted fact was established by the evidence are improper. The jury are the triors of the fact. L. & N. R. R. Co. v. Young, 168 Ala. 551, 53 So. 213.

Refused charges 16, 17, and 22 were covered by given charges 23 and 29. Refused charge 41, whether or not it states a correct principle of law, was covered by charges given, as 23, practically a general charge as to the trespass count, and 27 and 28, instructing that ownership of the trees was essential to the right of recovery. Charge 32 was substantially covered by given charges 29 and 31, instructing the jury that plaintiff could not recover for any trespass or for the alleged trespass by defendants on said land—broad enough to extend to the taking of trees thereon as well as the unlawful invasion of the land. These given charges are within the rule of Howton v. Mathias, 197 Ala. 463, 73 So. 92.

Charge 35 was confusing, and leaves for the jury's determination the meaning at law of the word "constructive," and it takes away from the jury the consideration of all question of plaintiff's right to possession. The refusal was harmless because the court had properly instructed them as to recoverable damages under the first count, and it was covered by given charges 23 and 29.

[45, 46] Charge 43 is not limited to the effect of such evidence as bearing on adverse possession and as considered in Aiken v. McMillan, 201 Ala. 280, 78 So. 56. It is not limited as to any count of the complaint. The

trial was had when the Code of 1907 was of force. It is provided that the bare right of possession to lands authorizes their recovery by the owner of such right of possession, and for the recovery of damages "for the withholding of the right." Code 1907, § 2453, Code 1923, § 5650; Eagle & Phœnix Mfg. Co. v. Gibson, 62 Ala. 369; Watters v. Ezell, 188 Ala. 385, 66 So. 443; Lee v. Raiford, 171 Ala. 124, 54 So. 543. Trover may be maintained by one not in possession of the land from which timber is taken as against one unlawfully withholding or converting the same. Christopher v. Lumber Co., 175 Ala. 484, 57 So. 837; Creagh v. Bass, 190 Ala. 135, 67 So. 288; Long v. Nadawah L. Co., 202 Ala. 523, 81 So. 25.

The judgment of the circuit court is affirmed.

Affirmed.

SOMERVILLE, MILLER, and BOULDIN, JJ., concur.